460 P.2d 997

**Clyde DAMRON and Eileen Damron, his wife, Appellants,**

**v.**

**Ples SLEDGE and Jane Doe Sledge, and Perel Polk and John Doe Polk, Appellees.**

**No. 9662.**

Supreme Court of Arizona.

In Division.

Nov. 6, 1969.

**152**

David Dietz, Harrison, Strick, Myers, & Sellers, by Mark I. Harrison and Robert D. Myers, Phoenix, for appellants.

Mangum, Christensen & Wall, by H. K. Mangum, Flagstaff, for appellees.

McFARLAND, Justice:

Clyde and Eileen Damron, hereinafter referred to as plaintiffs, brought an action against Ples Sledge (hereinafter referred to as Defendant Sledge) and Perel Polk (hereinafter referred to as Defendant Polk) to recover damages for personal injuries

"allegedly sustained as the result of an automobile collision wherein Defendant Sledge negligently and carelessly drove Defendant Polk's vehicle into plaintiffs' vehicle." From a written order of the trial court granting Defendant Polk's motion to dismiss plaintiffs' complaint, plaintiffs appeal.

Plaintiffs' complaint alleged that Defendant Sledge was negligent and that he was driving Defendant Polk's vehicle with her permission and acquiescence. Defendant Polk was represented by the attorney for National Union Insurance Company which insured her car. Defendant Sledge's insurance company, State Farm, secured attorneys who answered for him.

According to statements made by the attorneys for the parties on the day of trial, no insurance coverage is available for the acts of Defendant Sledge under the policies involved in the instant case if in fact Defendant Sledge was driving without the permission of Defendant Polk. On the basis of their assumption that Defendant Sledge was driving without permission, neither insurance company believed that it had a duty to defend him.

Evidently for this reason the attorneys for Sledge's insurance company withdrew, and Sledge thereafter was represented by his own attorney. In the pre-trial stages, Sledge's attorney soon found that he was putting in time, and advancing costs, and was not going to be able to collect any fee. He therefore applied to the court for permission to withdraw, and this was refused. On two occasions he made a request to the attorney for Defendant Polk that the insurance company pay his attorney's fees.

On the date set for trial, various motions were discussed in the trial judge's chambers. During the course of the argument, the substance of telephone calls, letters and conversations between all of the parties and their attorneys (as understood by the attorneys) since the time of the accident were related to the court. In particular, the following occurrences were related:

(1) Plaintiffs' attorney executed a covenant not to execute against Defendant Sledge; and

(2) Plaintiffs gave a note to the attorney for Defendant Sledge in the sum of $2,000.00 as payment of his attorney's fees; and

(3) In consideration therefor, Defendant Sledge assigned to plaintiffs whatever claim he had against the insurance companies for bad faith in failing to defend.

We are presented with the question of the validity of the prejudgment assignment which is claimed to be collusive and fraudulent.

It is well established that a claim by an insured against his insurer for failure of the insurer to defend may be assigned to the injured party. Hatfield v. State, Okl. Cr., 325 P.2d 972; Critz v. Farmers Insurance Group, 230 Cal.App.2d 788, 41 Cal. Rptr. 401, 12 A.L.R.3d 1142. The objection in the instant case arises because the assignment was completed before judgment was taken against the insured. This type of prejudgment assignment of a claim against an insurance company for failure to defend was exhaustively considered in the California case of Critz v. Farmers Insurance Group, supra. We believe the Critz case comes the closest to the procedure followed by the parties in the case now before us. The California Court approved of the procedure followed in Critz, stating:

> " * * * When the insurer breaches its obligation of good faith settlement, it exposes its policyholder to the sharp thrust of personal liability. At that point, there is an acute change in the relationship between policyholder and insurer. The change does not or should not affect the policyholder's obligation to appear as defendant and to testify to the truth. He need not indulge in financial masochism, however. Whatever may be his obligation to the carrier, it does not demand that he bare his breast to the continued danger of personal liability. By executing the assignment, he attempts only to shield himself from the danger to which the company has exposed him. He is doubtless less friendly to his insur-

er than he might otherwise have been. The absence of cordiality is attributable not to the assignment, but to his fear that the insurer has callously exposed him to extensive personal liability. * * "

In holding that the prejudgment assignment and covenant not to execute upon the judgment did not impart a collusive character to the personal-injury suit, the California court stated as follows:

> " * * * To uphold an equitable assignment under such circumstances does not supply the injured party with a disproportionate or unfair advantage. In our opinion, the present assignment is not violative of public policy if in fact a bad faith rejection had already occurred. If, on the other hand, the carrier was not guilty of bad faith, the plaintiff-assignee will lose the lawsuit regardless of the public policy aspects of the assignment."

Accordingly, we hold that the assignment in the instant case was not ipso facto collusive.

When the trial date arrived, plaintiffs moved to amend their complaint by dismissing with prejudice against Polk. Defendant Polk's attorney thereupon made strenuous objection to the requested dismissal with prejudice against his client. He argued that the arrangement was "tainted with conspiracy, chicanery, and fraud, and all they need do now is to get the court to approve of it and they have accomplished a fraudulent miscarriage of justice. * * * the plaintiffs buy out the entire lawsuit for the sole purpose of sticking a couple of insurance companies." It was the theory of Defendant Polk's attorney that he had a right to object to the dismissal against Polk, so that he could continue as an attorney in the trial, and thus be able to rebut evidence of any severe injury that he expected plaintiffs to try to prove.

Defendant Polk's attorney based his argument upon Rule 41, Rules of Civil Procedure, 16 A.R.S., which relates to voluntary dismissals. This rule, however, pertains only to dismissals *without prejudice*. Any time a plaintiff offers to dismiss with

**154**

prejudice, the attorney for the party against whom the dismissal is sought has no grounds for objecting when his client's rights are protected. In fact, when a lawyer is retained by a client to defend a lawsuit, his ultimate aim is to procure a dismissal with prejudice or a favorable verdict. We therefore hold a plaintiff has an *absolute right* to a voluntary dismissal of his complaint with prejudice. Smoot v. Fox, 6 Cir., 340 F.2d 301.

The attorney for Defendant Sledge made no attempt to conceal his arrangement, and frankly reported it to the court. During the course of the discussion, he stated that he intended to withdraw the answer of Defendant Sledge and allow a default to be taken. He also stated that he had not discussed this with the attorney for plaintiffs, or the attorney for Defendant Polk. In his argument on the motion to dismiss Defendant Sledge's attorney made the following points:

His client, Sledge, had run up considerable attorney's fees and expenses. Sledge claimed to have had permission to drive Polk's car. Both insurance companies had flatly refused to defend him. At stake were Sledge's wages (subject to garnishment), his driver's license (needed to get to and from work), and his liability for large attorney's fees for defense (much of which was already incurred.) He felt that when the insurance companies refused to defend Sledge, it was his obligation to his client to accept any honest arrangement which would save his client's livelihood. Therefore, under these facts Sledge's attorney could in the best interest of his client, properly accept such an arrangement to hold Sledge harmless from both attorney's fees and judgment.

Defendant Sledge's attorney also pointed out that he had not agreed to admit liability, and for the first time at the trial stated he intended to withdraw his answer and let the case go by default, as his client had no interest in a lawsuit by which he was exposed to no loss. He also pointed out that in many cases the defense admits liability and merely contests the proof of

damages, which must still be made, even where defendant defaults. He stated he considered his action to be within the bounds of good ethics and challenged Defendant Polk's attorney to bring the matter before the ethics committee of the Bar Association, if he thought that wrongful conduct had taken place.

At the hearing on the motion to dismiss Defendant Polk, *no testimony was taken.* The 80-page transcript shows only arguments of the opposing attorneys. The trial judge stated:

"I don't know whether there was any bad faith involved. *In fact, knowing the parties [attorneys] involved, I would doubt that it was * * *"* [Italics ours.]

He also stated:

"I think that no one has the right to step in and buy a defense * * * I think the defendant Sledge had a right, and should have proceeded to defend, if in fact he had a legitimate defense to this case * * * I think that the matter is collusive."

and dismissed plaintiffs' entire action against both defendants. Plaintiffs appeal.

We hold that collusion is not evident from the record which for the most part consists of arguments of the attorneys. We cannot conceive of a case where there is collusion without bad faith. There are some statements by the attorneys in their arguments that indicate possible collusion. For example, there appears to be some conflict between Defendant Sledge's testimony in his deposition and the complaint. This could be because pleadings often contain allegations that cannot be proved, and are not even seen by the party whose attorney draws them. It can be also explained by the statement of Defendant Sledge's attorney that Sledge

"* * * is a very very ignorant man. You can ask him a question and you can get any answer you want, and the only thing I did is let him go in and he talked and he went—and he had his deposition * * * You'll see, if he is ever on the stand, that this man will

get up there and you won't be able to understand him * * * I didn't do anything at these depositions. I just sat there * * *"

Defendant Sledge claimed that he was a part owner of the car and could use it whenever he pleased without express permission. When asked, he said that he, nevertheless, always "asked" permission before taking the car. This, however, might merely have meant that he always told the owner that he was taking the car before actually using it. There is some indication that Defendant Polk did not drive the car herself.

There is no question but that the trial court has inherent power to dismiss a case which is collusive. Before doing so, however, it must hold a hearing and *take evidence* which will prove or disprove the presence of such collusion. It cannot be held that as a matter of law collusion exists simply because a defendant chooses not to defend when he can escape all liability by such an agreement, and must take large financial risks by defending. If, at a hearing, where the testimony comes from *sworn witnesses* rather than from arguments of the attorneys, it appears that the defendant instead of defaulting agrees to perjure himself and testify falsely to statements that are untrue, and that plaintiff is a party to the agreement, or if some other definite evidence of collusion is adduced by proper testimony, a dismissal of the entire action may be justified.

The initial argument of the attorney for Defendant Polk is that to dismiss against Polk would eliminate the attorney from participating in the trial and from using medical rebuttal witnesses on the question of the extent of the injuries. This would permit plaintiff to secure an unjustifiably large verdict completely ex parte. This is a question that a liability-insurance carrier should consider before refusing to defend. Liability policies give the carrier the exclusive right to manage the defense and make it the company's duty to defend. American Casualty Co. v. Timmons, 6 Cir., 352 F.2d 563. Companies have the opportunity of investigating the question of whether the use was permissive before the trial takes place. The facts may be inconclusive; the company is then faced with the problem of whether to refuse to take part in the defense and risk a large judgment which they may be forced to pay if permission is later proved, or to defend the lawsuit and be met later with an allegation that they have waived the defense of lack of permission to use. Where the carrier sends its insured a notice that it is reserving its rights to contest liability for any judgment, and then goes ahead and defends the action, it is almost uniformly held that by this notice the company may defend and use its best efforts to prevent an excessive verdict, without thereby waiving its right to raise the question of liability under the terms of the policy at a later date. O'Dowd v. American Surety Company, 3 N.Y.2d 347, 165 N.Y.S.2d 458, 144 N.E.2d 359; Anno. in 38 A.L.R.2d 1148 at page 1161.

If the company refuses to defend at all, it must accept the risk that an unduly large verdict may result from lack of cross-examination and rebuttal. But it cannot, as in the instant case, participate in a trial as the legal counsel for a party against whom no cause of action is stated in the complaint, when the plaintiffs desire to dismiss their action with prejudice.

We have been unable to find sufficient facts to sustain the judgment of the trial court; we therefore reverse the order of the Superior Court dismissing plaintiffs' complaint.

Since Defendant Polk's attorney agreed to a dismissal of Defendant Polk's Cross-claim against Defendant Sledge and Defendant Polk's Counterclaim against Plaintiffs on the basis of the court's dismissal of plaintiffs' complaint, Defendant Polk has the right to re-instate her Cross-claim and Counterclaim if she so chooses.

LOCKWOOD, V. C. J., and HAYS, J., concur.