691 P.2d 738

Joan McGOUGH, surviving spouse of Harry Francis McGough, Jr., deceased, on her own behalf and for and on behalf of Heather Leigh McGough, surviving daughter of Harry Francis McGough, Jr., and Harry McGough, Sr., and Dorothea McGough, surviving parents of Harry Francis McGough, Jr., Plaintiffs-Appellees,

v.

INSURANCE COMPANY OF NORTH AMERICA, Intervenor-Appellant.

No. 1 CA–CIV 5779.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 20, 1984.

---

Langerman, Begam, Lewis & Marks by Samuel Langerman, Thomas F. Dasse, Amy G. Langerman, Phoenix, for plaintiffs-appellees.

Black, Robertshaw, Frederick, Copple & Wright, P.C. by Steven D. Copple, Jon R. Pozgay, Phoenix, for intervenor-appellant.

## OPINION

CONTRERAS, Presiding Judge.

This case arises from a wrongful death action in which the plaintiffs and defendants stipulated (by means of a covenant not to execute) to a judgment against the defendants in the amount of $1,100,000.00. The appeal was not brought by either the plaintiffs or the defendants. Instead, appellant in this case is the defendants' insurance company, the Insurance Company of North America (INA). INA seeks to appeal both from the $1,100,000.00 judgment as well as from the trial court's order denying INA's alternative motions, which were: 1) a motion to consolidate the wrongful death action with a pending declaratory judgment action on the issue of insurance coverage; 2) a motion to intervene in the wrongful death action and to request declaratory relief; 3) a petition to enjoin the parties from interfering with INA's right to defend under a reservation of rights and from attempting to bind INA to the stipulated value of the case; and 4) a motion to continue the evidentiary hearing (where the $1,100,000.00 judgment would be submitted by stipulation to the court) and to set for trial the issues of liability and damages. We conclude that the trial court erred in not permitting INA to intervene in the wrongful death action. Accordingly, for reasons we set forth, the judgment is reversed and the cause is remanded with directions that intervention be granted and for further proceedings consistent with this opinion.

## FACTS

On June 22, 1978, an aircraft owned by Stephen and Kathy McCabe and piloted by Dr. Ralph Whiting crashed while being flown from Arizona to Oregon. A passenger in the aircraft, Harry Francis McGough, Jr., died as a result of injuries sustained in that crash.

The owners of the aircraft, the McCabes, had a $100,000.00 liability policy covering the aircraft in question, which policy was issued by Compass Insurance Company (Compass). The pilot, Dr. Whiting, was insured under a $1,000,000.00 policy issued by INA. INA notified the Whitings that it was reserving all rights under the policy. Subsequently INA informed them that no coverage was available under the policy because the subject aircraft was experimental i.e., the aircraft had not received an airworthiness certificate. Compass also denied coverage under the McCabe policy.

The Whitings retained private counsel and on July 6, 1979, filed a declaratory judgment action to determine coverage under the INA policy. INA answered, denying coverage. On October 11, 1979, decedent's surviving spouse on her behalf and on behalf of other surviving relatives of the deceased brought a wrongful death action against the McCabes along with Dr. Whiting and his spouse. Counsel for the Whitings filed an answer on their behalf.

In early December, 1979, the Whitings retained new counsel, Leroy W. Hofmann, who wrote to INA demanding that INA retain counsel to defend the Whitings. On January 7, 1980, Hofmann wrote to INA's counsel, Steven D. Copple, noting that he had spoken with Copple by telephone at which time Copple had advised Hofmann "that INA was going to accept the defense of ... Dr. and Mrs. Whiting." Hofmann's letter went on to state that he had advised the Whitings "that INA would probably require a Reservation of Rights Agreement, and they are agreeable to that." He also indicated that he wanted arrangements for INA's defense of the Whitings accomplished by January 20.

By letter dated January 17, 1980, INA authorized Copple to defend the Whitings under a reservation of rights and asked that Hofmann be so advised. Apparently,

Hofmann never received this information. Copple, viewing the INA policy as an "excess" policy and the Compass policy as primary, attempted to ascertain whether or not Compass was planning to accept the Whitings' defense. On March 14, 1980, Compass accepted the Whitings' defense under a reservation of rights and hired attorney Robert Welliever to defend.[1] Hofmann also indicated that the Whitings planned to dismiss their declaratory judgment action against INA. On June 12, 1980, INA filed a declaratory judgment action with respect to coverage against the Whitings. Shortly thereafter, the Whitings moved to dismiss their declaratory judgment action against INA, which motion was granted on July 29, 1980.

In August of 1980, Copple learned that Compass was considering paying its policy limits of $100,000.00 and withdrawing from the defense of the suit. On August 21, 1980, Copple wrote to all the parties in the action stating "that INA will assume the cost of defending Whiting in the McGough v. Whiting lawsuit if and when Compass Insurance determines it no longer has such an obligation." He also stated that INA would retain the same attorney that Compass had retained to defend the Whitings "in order to maintain a continuity of Whiting's defense." Copple limited this offer by stating that INA would continue to require full reservation of its rights under the policy regarding any obligation to pay a judgment rendered against the Whitings.

On August 27, 1980, Hofmann responded by letter to Copple, stating that the Whitings refused to allow INA to provide a defense unless INA dismissed its declaratory judgment action and acknowledged coverage under its policy. On the same date, the plaintiffs and the Whitings executed a covenant not to execute. Pursuant to that covenant, it was agreed that a stipulated judgment on liability and damages would be entered against the Whitings in the amount of $1,100,000.00; that plaintiffs would not execute against the Whitings thereon; that Compass would pay $100,000.00 to plaintiffs and thereby be free from further claims; and that any rights held by the Whitings against INA were assigned to plaintiffs.

An evidentiary hearing was scheduled for September 12, 1980, at which time INA, by and through attorney Copple, appeared and sought to intervene on its own behalf claiming that, although it believed as a matter of law no coverage was afforded under its policy for the wrongful death claim, the issue had not been resolved and, until it was, INA retained a vested interest in the outcome of the wrongful death litigation.[2] The trial judge took INA's motion under advisement and continued with the evidentiary hearing. Plaintiffs submitted to the court a copy of the covenant not to execute. INA's motion was subsequently denied and formal judgment was entered for plaintiffs and against defendants Whiting in the stipulated amount of $1,100,000.00.

A threshold issue that must be decided is whether INA may appeal from the judgment entered against the Whitings. Rule 1 of the Arizona Rules of Civil Appellate Procedure provides that "An appeal may be taken by any party aggrieved by the judgment." Under this rule one must be both (1) a party to the action; and (2) one "aggrieved" by the judgment or order from which the appeal is taken. *Christian v. Cotten*, 1 Ariz.App. 421, 403 P.2d 825 (1965). In order for one to qualify as an aggrieved party "there must be a denial of some personal or property right to the party by the decree, and such denial must come as a direct result of the decree, and not merely as a result in some other proceeding of the application of a legal principle established in the decree appealed

---

1. There is a dispute in the briefs as to whether Hofmann informed Copple that he was satisfied that an insurance company (namely Compass) was providing a defense for the Whitings or whether Hofmann continued to request that INA accept the defense of the Whitings.

2. INA's motion included the several alternative requests that were listed above.

from." *In re Roseman's Estate*, 68 Ariz. 198, 200, 203 P.2d 867, 868 (1949).

■ Clearly, INA has a direct and substantive interest in the outcome of this litigation since it may be subject to a claim of res judicata on the issues of Dr. Whiting's liability for the decedent's death and the amount of damages should the INA insurance policy be held to cover the occurrence in question. By virtue of the fact that intervention was denied below, however, INA was prevented from becoming an actual party to the action.

INA has also appealed from the order denying its motion to intervene. This order was entered pursuant to Rule 54(b) and INA has properly appealed therefrom. In *Hill v. Alfalfa Seed & Lumber Co.*, 38 Ariz. 70, 76–77, 297 P. 868, 870–71 (1931), our supreme court considered whether a principal had a right to appeal from an order denying him the right to intervene in an action against his surety. The court held:

> Section 3659, Revised Code of 1928. Subdivision 5 of said section provides for appeal "from any order affecting a substantial right, made in any action when such an order in effect determines the act and prevents judgment from which an appeal might be taken."[3] We think the order denying intervention affected a very substantial right of Hill's. It determined the action, so far as Hill was concerned; it prevented a judgment for or against him from which an appeal could be prosecuted.... He was not a stranger or interloper, showing no interest in the litigation. It is provided in section 3658, Revised Code of 1928, that any party aggrieved by a judgment or order reviewable by this court may appeal. This language is certainly broad enough to include a person whose application to intervene has been denied, especially when the application shows him to be primarily and ultimately liable for any obligation established in the action. We think a person applying to intervene, who qualifies within the statute, is, under ex-

isting law, entitled to appeal from an order denying his application....

In that case, the court found that the order denying intervention was in error. Therefore, the entire judgment was reversed and remanded with directions to allow intervention. Thus, an order denying intervention is an appealable order and, if the order is reversed, the entire judgment will be reversed. INA, therefore is a "party aggrieved", entitled to appeal from the order denying its motion to intervene as well as from the judgment entered in its absence, if it successfully appeals the order.

We now turn to the issue of whether INA's motion to intervene was proper. Rule 24(a) of the Arizona Rules of Civil Procedure sets forth the requisite showing that must be made in order for a party to have a right to intervene. That rule provides:

> *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.

■ INA has not claimed any statutorily based right to intervene. Instead, INA claims that the disposition of the action will impair or impede its ability to protect its interest in limiting the amount paid pursuant to the $1,000,000.00 insurance policy. Specifically, INA claimed that it would be bound by the collateral estoppel effect of the determination both of Dr. Whiting's liability and of the damages suffered in the amount of $1,100,000.00. Alternatively, INA asked that it not be bound from those determinations in any subsequent proceeding to collect such sums under the policy. Since collateral estoppel will generally be applied against an insured as to litigated issues of the existence and extent of the

---

**3.** This language is currently found in A.R.S. § 12–2101(D).

insured's liability to the injured party, *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983), we conclude that INA has clearly shown the requisite interest under Rule 24(a), Arizona Rules of Civil Procedure.

■ This does not end our inquiry as to whether INA had the right to intervene because it appears to be the law in Arizona that an insurer will lose the right to intervene if it breaches its contract by refusing to provide a defense for its insured. The rule set forth in *Manny v. Estate of Anderson*, 117 Ariz. 548, 550, 574 P.2d 36, 38 (App.1977) is as follows:

> If the insurer breaches its contract by refusing to defend, and the insured then retains counsel and protects himself, the insurer cannot later enter the case without the insured's permission (citations omitted).

The appellees in this case, the plaintiffs below, assert that INA in fact refused to defend the insureds, the Whitings, in the wrongful death action and that the Whitings therefore were forced to hire private counsel to defend them. Thus, they claim INA no longer had a right to intervene at the time intervention was sought.

It is further asserted that as insureds, the Whitings had a right to demand that INA defend them without reservation of its rights under the insurance policy. They claim that an insured is never required to accept a defense conditioned on a reservation of rights. Since INA never agreed to defend other than under the condition that its rights to deny coverage be reserved, if the appellees are correct, there would be no question that INA had no right to intervene.

The parties have cited us to no Arizona case dealing with precisely this issue and

we have found none. The appellees cite cases from several jurisdictions which provide that the insured has a right to refuse a conditional offer of defense and to require the insurer to either defend unconditionally, thereby waiving its non-coverage defense, or to refuse to defend, thereby risking a determination of liability and damages for which it will be bound if it is later held to have coverage. *See Medical Protective Co. v. Davis*, 581 S.W.2d 25 (Ky. 1979); *Butters v. City of Independence*, 513 S.W.2d 418 (Mo.1974); *Boise Motor Car Co. v. St. Paul Mercury Indemn. Co.*, 62 Idaho 438, 112 P.2d 1011 (1941); *Norton v. Farmers Automobile Inter-Insurance Exchange*, 40 Cal.App.2d 636, 105 P.2d 136 (1940). *See also* 7C Appleman Insurance Law and Practice (Berdal ed.), § 4686 p. 175 (1979).

Appellants primarily rely on *Ferguson v. Birmingham Fire Ins. Co.*, 254 Ore. 496, 460 P.2d 342 (1969), in which the Oregon Supreme Court held that an insured is obligated to accept a defense proffered under a reservation of rights.[4] The court there viewed as a breach of the insurance contract the insured's demand that the insurer choose either to waive its rights to litigate coverage or to withdraw from the case. Appellants argue that the Arizona courts have impliedly taken the position held by the Oregon court.

■ As support for this claim, INA points out that Arizona courts have separated the duty to defend from the question of coverage, requiring insurers to defend even if doubt existed regarding coverage. In *Lawrence v. Burke*, 6 Ariz.App. 228, 431 P.2d 302 (1967), an insurer who wrongfully refused to defend its insured was permitted to intervene and set aside a default judgment against its insured (over the insured's

---

**4.** INA also asserts that this court must apply the law of Oregon to the issues here because the parties were Oregon residents. We disagree. Under the approach of the Restatement of Conflicts of Laws, as adopted in Arizona, the choice of law must be determined on an issue-by-issue basis. *See Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254 (1968). The issue here is whether an insurer has the right to intervene in a suit

against its insured, brought in an Arizona court, when the insured has refused to agree to such intervention absent the insurer's waiver of its right to defend under a reservation of rights. Arizona's interest in the procedures followed in its courts is a great one. In view of our holding, that the insurance company may intervene, there is no true conflict in any case.

objections) after the insured took no steps to protect himself. The court pointed out that the insured had a duty to mitigate damages so that "[h]e could not on the one hand refuse to employ counsel, even though due to financial problems, and on the other hand refuse State Farm's belated aid in setting aside the judgment and in sustaining the trial court's action on appeal. Had Burke employed his own counsel who then sought to protect him, we would be faced with a different picture." 6 Ariz.App. at 235, 431 P.2d at 309. Thus it is clear that an insurer may intervene and set aside a default judgment against its insured even if the insurer previously refused to defend. It has also been held, conversely, "that when an insurance company elects not to defend and the assured then retains counsel and defends himself, the assured may then reject the belated offer of the insurance company to re-enter and participate in the defense of the law suit." *Edler v. Edler*, 9 Ariz.App. 140, 142–143, 449 P.2d 977, 979–80 (1969). Thus, if .INA refused to defend at all it could not force the insured to agree to its intervention later in the suit.

In *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969), the Arizona Supreme Court recognized the right of an insured to enter into a covenant not to execute when the insurance company refuses to defend. The court stated that "[i]f the company refuses to defend at all, it must accept the risk that an unduly large verdict may result from lack of cross-examination and rebuttal." 105 Ariz. at 155, 460 P.2d at 1001. The court did recognize the validity of an insurance company's defense under reservation of rights; at least insofar as there is no objection voiced by the insured. "Where the carrier sends its insured a notice that it is reserving its rights to contest liability for any judgment, and then goes ahead and defends the action, it is almost uniformly held that by this notice the company may defend and use its best efforts to prevent an excessive verdict, without thereby waiving its right to raise the question of liability under the terms of the policy at a later date." 105 Ariz. at 155, 460 P.2d at 1001.

The purpose for defending an insured under a reservation of rights and litigating coverage in a collateral proceeding was set forth in *Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 509 P.2d 222 (1973). The court stated:

Where there are facts which might exclude coverage, the insurer cannot always defend with complete fidelity. There must be a proceeding at which the insurer and the insured are each represented by counsel of their own choice to fight out their differences. Such a testing of the insurer's liability may take the form of a declaratory judgment brought in advance of the third party's action as in the instant case. If the insurer refuses to defend and awaits the determination of its obligation in a subsequent proceeding, it acts at its peril, and if it guesses wrong it must bear the consequences of its breach of contract (citations omitted).

109 Ariz. at 332, 509 P.2d at 225. *Kepner* is a strong indication that the Arizona Supreme Court will recognize the right of an insurer to defend its insured under a reservation of rights.

More recently, in *Farmers Ins. Co. v. Vagnozzi, supra,* our Supreme Court held that where there is conflict of interest between insured and insurer in the injured party's suit against the insured, the insurer will not be collaterally estopped from relitigating issues as to which there was such a conflict, whether or not the insurer defended in the third-party suit. Conversely, collateral estoppel would apply as to those issues as to which there was no conflict of interest such as the existence and extent of the insured's liability to the injured person. *Vagnozzi* arose on an appeal from summary judgment in favor of the insurer in a declaratory judgment action. In a personal injury suit against the insured, the insurer began representation of its insured under a reservation of rights and filed a declaratory judgment action based upon facts tending to show that coverage was not available under the policy. The insurer moved to consolidate the actions but before a rul-

ing was made on this motion, summary judgment was granted to the injured party in the tort case. The court explained:

What transpired between these dates can be characterized as a "race to the courthouse" where the parties hope to bind each other to facts favorable to one claim. The record reveals that the attorney retained by Farmers was approached by (plaintiff's) attorney regarding a settlement .... (He) proposed to execute a covenant agreeing not to satisfy any judgment against the personal assets of (the insured) in exchange for a promise by (the insured) not to oppose the motion for summary judgment on the issue of liability in the tort claim. An express condition of this proposal was that there would be no disclosure to (the insurer). Due to a possible ethical conflict created by the conditions of (the) offer, (the insured's) attorney withdrew from the case. New counsel was substituted, (the insured) accepted plaintiff's offer and did not oppose (plaintiff's) motion for summary judgment on the issue of (the insured's) negligence.... We can conceive of no explanation for these tactics other than the desire of (plaintiff's) counsel to maneuver the insurer into a position where it would be obligated to pay the judgment and estopped from raising the defense of noncoverage under the intentional acts exclusion.

138 Ariz. at 447, 675 P.2d at 707.

In holding that collateral estoppel would not be applied against an insurer on those issues as to which the interests of the insured and insurer are adverse, without regard to whether the insurer defended the insured in the third party suit, the court emphasized that *"[i]f the insurer defends* the insured pursuant to a contractual duty to defend, the insurer *must do so under a properly communicated reservation of rights to later litigate coverage.* Restatement (Second) of Judgments § 58 (1982)." 138 Ariz. at 448, 675 P.2d at 708 (emphasis added). In addition, the court pointed out that the attorney supplied by an insurance company to defend the insured owes complete loyalty to the insured even when the

insurance company reserves its right to subsequently litigate coverage. *See also, Parsons v. Continental National American Group,* 113 Ariz. 223, 550 P.2d 94 (1976). To adopt a rule that would allow the insured to force the insurance company to either defend and give up its rights to later litigate coverage, or to refuse to defend altogether, would be inconsistent with the position taken by the Arizona Supreme Court in *Vagnozzi,* which held that the insurance company is not estopped from relitigating issues as to which its interests were adverse to the interests of the insured. This is particularly true when the attorney supplied by the insurance company owes his loyalty to the insured. An insurer can only protect itself on the question of the insured's liability to the injured party by actually taking part in the defense.

■ We therefore hold that an insured may not condition the insurer's right to defend upon an agreement by the insurer to waive its right to later litigate the question of coverage.

■ Appellees assert that even if this is so, INA gave up its right to defend the Whitings when it refused the tender of defense in December, 1979 and January, 1980. They claim that INA refused to step in, thus forcing the Whitings to hire outside counsel and therefore, the Whitings had the right to condition their consent to INA's defense as they saw fit.

The only evidence in this regard are the various letters between counsel. As noted above, INA did not actually move to be permitted to take over the defense of Whitings until it became apparent that Compass was withdrawing from the case. At that time, INA offered to continue the defense, retaining the same attorney who had been defending the Whitings under retainer from Compass. There is no evidence of any refusal by INA to defend the Whitings. The delays involved were not inordinate, and we fail to see how the Whitings were prejudiced when they were represented by counsel supplied by Compass which counsel

INA agreed to pay when Compass had decided to withdraw from the case. The fact that the Whitings had also employed private counsel in addition to the counsel provided by Compass is not sufficient reason to find any prejudice to them by INA's decision to rely on counsel supplied by Compass (which INA considered to be the "primary carrier").

We conclude that INA's actions in this case did not constitute a refusal to defend and therefore the Whitings were not free to refuse INA's offer to continue on retainer the attorney who had been provided by Compass to defend them. Had Compass not retained counsel to defend the Whitings, INA would have been required to do so as it became necessary to protect the insureds. Since Compass did step in, it was reasonable for INA to wait until it appeared the Whitings would be without counsel retained by an insurer before INA offered to pay for additional counsel. INA did not give up its right to intervene in the action and its motion to intervene was timely.

For the foregoing reasons, the judgment is reversed and the cause remanded, with directions that intervention be granted and for further proceedings consistent with this opinion.

FROEB and OGG, JJ., concur.