754 P.2d 335

**Jackie STUFFLEBEAM, individually and as natural parent for Penelope Stufflebeam, a minor child, Plaintiff/Appellee,**

**v.**

**CANADIAN INDEMNITY COMPANY, Garnishee Defendant/Appellant.**

**No. 2 CA–CV 88–0089.**

Court of Appeals of Arizona, Division 2, Department B.

April 7, 1988.

Reconsideration Denied May 16, 1988.

David A. Treat, Phoenix, for plaintiff/appellee.

Burch & Cracchiolo, P.A. by Brian Kaven and Daniel R. Malinski, Phoenix, for garnishee defendant/appellant.

## OPINION

FERNANDEZ, Judge.

Appellant Canadian Indemnity Company seeks to overturn the summary judgment entered against it in a garnishment action brought by appellee Jackie Stufflebeam, the mother of Penelope Stufflebeam, in her attempt to collect on a default judgment Stufflebeam obtained against Canadian's insured, Inez Heflin, the mother of Gregory Barrington. We affirm.

In February 1983, Penny Stufflebeam was injured in an automobile accident. She was a passenger in a car driven by Gregory Barrington, who was then 15 years old, who had no license or learner's permit to drive, who had earlier that evening shared a marijuana cigarette, and who at the time was racing another car at speeds of approximately 60 miles per hour on a Phoenix street. Barrington's mother and stepfather were insured by Canadian and had policy limits of $300,000.

In May 1983, Stufflebeam's attorney wrote the company and offered to settle the claim for $30,000. On July 12, the company wrote Heflin about the settlement demand and advised that it was declining the demand. The company also advised Heflin that in the event of a lawsuit, it would provide a complimentary defense but that it reserved the right to withdraw at any time and to disclaim liability. Suit was filed July 27, 1983. Canadian undertook Heflin's defense and on August 30, 1983, filed an action seeking a declaration of non-coverage on the ground that Barrington was not a permissive user of the vehicle at the time of the accident. Apparently, Canadian contended Barrington was not a permissive user because he had neither a driver's license nor a learner's permit at the time of the accident.

In September 1983, Heflin retained independent counsel. On January 12, 1984, Heflin's attorney wrote to the attorney pursuing Canadian's declaratory action, noting that a conflict of interest existed between Heflin and Canadian as evidenced by the pending declaratory judgment action. Heflin's attorney informed the company that the tort plaintiffs had indicated a willingness to settle and stated that he did not believe Heflin could be forced to accept Canadian's "complimentary defense." He also noted that Canadian's reservation of rights letter had not advised Heflin of the right to obtain outside counsel. The attorney contended the company's attempt to deny coverage was unfounded and proposed that the company dismiss the declaratory action. Finally, the attorney told the company that if the declaratory action were not dismissed, he would substitute as counsel for defendants in Stufflebeam's action and arrange for a settlement to protect Heflin and Barrington's interests.

The company attorney responded asking for clarification of the statement that the insureds would enter into a settlement. Heflin's attorney replied on January 19, 1984, and stated in part as follows:

> Your letter of January 18, 1984, also requests clarification of the possible settlement with the tort claimants. Specifically, those settlements would be such that Mr. Barrington would admit liability in exchange for a covenant not to execute against any of his personal assets. We would then proceed to the court to obtain a judgment. Any execution on that judgment would be directed to the insurance company. In the alternative, we have discussed with the tort claimants' attorneys the possibility of consenting to judgments in certain amounts.

During the next few weeks, Heflin's attorney wrote several more letters asking the company to respond to his January 12 letter. He extended his deadline for a response to March 30, but the company did not respond. On April 3, he wrote to the attorney the company had retained for its "complimentary defense" and requested the attorney to execute a stipulation for substitution of counsel. In the letter, he wrote as follows:

David Treat, the attorney for Jackie Stufflebeam, has expressed his intention to enter into an agreement with Greg Barrington which will protect him from any personal liability. This agreement will include an admission of liability by Greg Barrington, dismissal of the Heflins and a determination by the court of the damages to which Mr. Treat's client is entitled. The agreement will provide that Mr. Treat's client will look only to the insurance coverage which might cover Mr. Barrington and will not seek recovery from his personal assets or those of his parents.

The attorney asked for the stipulation to be signed within ten days so he could file it with the court. He stated, "The agreement will then be entered into and Judge Riddel will be approached to determine the extent of Penelope Stufflebeam's damages." Canadian's attorney signed and returned the stipulation without comment.

The substitution was filed June 12, 1984. The settlement agreements were entered into on August 8, 1984, and an August 9 minute entry in the tort action indicated that the defendants were withdrawing their answer. The default hearing was held November 2, 1984. Heflin's attorney was present but did not participate. The answer was withdrawn, and defendants' default was entered. The court heard testimony from Penny and Jackie Stufflebeam and admitted photographs, the accident report, medical records and depositions of Barrington and Penny's doctor into evidence. The court entered judgment in the amount of $200,000 in compensatory damages, $200,000 in punitive damages and $202.05 in costs. No appeal was taken from the judgment. In an affidavit attached to the cross-motion for summary judgment, Stufflebeam's attorney stated that he sent copies of the judgment to Canadian's attorneys. Canadian does not dispute that fact but complains only that it did not receive prior notice of the default hearing. It is undisputed that as of February 7, 1984, Penny had incurred medical bills totalling $753.

The declaratory action was tried in June 1985, and the court found that Heflin's coverage applies to the accident. That judgment was upheld on appeal.

In August 1985, Stufflebeam sought a writ of garnishment against Canadian. Canadian filed a motion for summary judgment, contending that the default judgment had been obtained by a collusive agreement and that Heflin had breached the policy's cooperation clause by entering into the agreement. Stufflebeam responded with a cross-motion, contending that Canadian was estopped from raising the issue of non-cooperation. The trial court entered judgment in favor of Stufflebeam, listing a number of conclusions of law in its minute entry. It found that the insured had not breached the policy's cooperation clause. Because the policy coverage limits are $300,000, the court awarded that amount to Stufflebeam but ordered Canadian to pay interest on the $400,202.05 judgment from the date of entry of the default judgment.

Canadian contends the trial court erred, arguing that Heflin was still bound by the cooperation clause and violated it by entering into the agreement with Stufflebeam, that an insurer can raise non-cooperation as a defense to any judgment in excess of the statutory minimum pursuant to A.R.S. § 28–1170, that the default judgment is patently unreasonable and that Canadian is not liable for interest on any amount in excess of its coverage limits.

## COOPERATION CLAUSE

Canadian notes that Stufflebeam, as garnishor, has no greater rights in the policy than Heflin, its insured. *Carpenter v. Superior Court*, 101 Ariz. 565, 422 P.2d 129 (1966). It thus has the right to assert any breach of the policy by the insured in the garnishment proceeding by Stufflebeam. *Kepner v. Western Fire Insurance Co.*, 109 Ariz. 329, 509 P.2d 222 (1973).

Our supreme court recently held that "an insured being defended under a reservation of rights may enter into a *Damron* agreement without breaching the cooperation clause." *United Services Automobile Association v. Morris*, 154 Ariz. 113, 119, 741 P.2d 246, 252 (1987). See *Damron v.*

*Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969). It is undisputed here that Canadian initially tendered Heflin a defense under a reservation of rights. The additional requirement imposed by the court in *Morris* is stated as follows: "Such agreements must be made fairly, with notice to the insurer, and without fraud or collusion on the insurer." 154 Ariz. at 119, 741 P.2d at 752.

■ The agreement entered into between Stufflebeam and Barrington and Heflin did not provide for entry of judgment in any particular amount. Barrington and Heflin agreed to withdraw their answer and to "consent to a default judgment being taken against them" in return for Stufflebeam's agreement not to execute against Barrington or Heflin and to pursue collection of the judgment from Canadian. It is clear from a review of the letters sent by Heflin's attorney to Canadian that Canadian received adequate notice that Heflin and Barrington had entered into the settlement agreement. The attorney did precisely what he promised the company he would do: he asked the company-retained counsel to stipulate to a substitution of counsel, he had Heflin and Barrington enter into a *Damron* agreement, he withdrew defendants' answer and permitted their default to be entered, and he allowed the court to determine the amount of damages to be awarded.

At the default hearing, Penny Stufflebeam testified about the continuing pain in her knees and the limitations it placed on her athletic activities. She also testified she had left high school and studied under a homebound program for most of one semester because of continuing emotional problems. The court also had before it depositions of Barrington and of Penny's treating doctor, both of which were taken after the entry into the settlement agreement. In the doctor's deposition, which was taken by Stufflebeam's attorney only, he testified that the accident had aggravated a pre-existing knee condition. Barrington's deposition was taken in the declaratory judgment action filed by Canadian. Barrington was examined both by Stufflebeam's attorney and Canadian's attorney,

and Heflin's independent counsel was present at the deposition. We presume that the court determined the amount of the default judgment based on the evidence presented to it, and there is nothing in the record that indicates otherwise.

There is no indication in the record of any fraud or collusion between Stufflebeam and Heflin. Canadian has neither presented us with a factual issue on the question of fraud or collusion nor has it shown any irregularity in the default proceeding. We note that Canadian failed to respond to Heflin's attorney's letters about his plans in the lawsuit, that Canadian's attorney signed the stipulation for substitution of counsel without comment and that Canadian then withdrew from the case and paid no further attention to it. It never moved to intervene in the lawsuit, and it has never moved to vacate the default judgment. See *McGough v. Insurance Company of North America,* 143 Ariz. 26, 691 P.2d 738 (App. 1984). It also never amended its declaratory action complaint to allege breach of the cooperation clause although that lawsuit was pending for more than a year after Canadian's retained attorney withdrew from the case. Therefore, we affirm the trial court's finding that Heflin did not violate the cooperation clause by entering into the settlement agreement with Stufflebeam.

Because we find that Heflin did not breach the cooperation clause, we need not address Canadian's claim that A.R.S. § 28-1170 cannot be used to prevent an insurer from raising the defense of non-cooperation.

### INTEREST AWARD

Canadian also complains because, although the trial court limited the amount of Stufflebeam's judgment to $300,000, the policy coverage limits, it awarded interest on the full default judgment amount of $400,202.25 beginning November 20, 1984, the date the judgment was entered. Canadian contends no authority supports the interest award. We agree.

■ The insurance policy provides liability coverage in the total amount of $300,-

000. That is the total amount that Stufflebeam can receive in her garnishment proceeding, and the interest award must be limited to that amount. The judgment is thus modified to reflect that interest is awarded on the amount of $300,000.

Each party is to bear its own attorney's fees on appeal. Canadian is awarded costs on appeal pursuant to A.R.S. § 12–342. The judgment is affirmed as modified.

LIVERMORE, P.J., and ROLL, J., concur.