823 P.2d 1332

**H.B.H., individually and as next friend of T.R.H., a minor, Plaintiff–Appellee,**

**John Doe, individually; John Doe and Jane Doe, husband and wife, Defendants–Appellees,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Applicant for Intervention–Appellant.**

**No. 1 CA–CV 89–282.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 10, 1991.

Review Denied Feb. 19, 1992.

Renaud, Cook, Videan, Geiger & Drury, P.A. by J. Gordon Cook, Gary A. Fadell, Phoenix, for plaintiff-appellee H.B.H.

Law Office of John F. Day, P.C. by John F. Day, Scottsdale, for defendants-appellees Doe.

Stinson & Roberts, P.A. by Edwin R. Roberts, Phoenix, for applicant for intervention-appellant.

## OPINION

EHRLICH, Presiding Judge.

■ The sole question raised in this appeal is whether the trial court improperly denied State Farm Fire and Casualty Company's motion to intervene. Both the denial of a motion to intervene and the judgment entered in the proposed intervenor's absence are appealable. *Anderson v. Martinez,* 158 Ariz. 358, 359, 762 P.2d 645, 646 (App.1988); *McGough v. Insurance Company of North America,* 143 Ariz. 26, 30, 691 P.2d 738, 742 (App.1984). We conclude that the trial court erred by not permitting State Farm to intervene in the underlying action. Therefore we must reverse the entire judgment. *United States Fidelity and Guaranty Co. v. Alfalfa Seed and Lumber Co.,* 38 Ariz. 70, 76–77, 297 P. 868, 870–71 (1931); *Anderson,* 158 Ariz. at 359, 762 P.2d at 646; *McGough,* 143 Ariz. at 30, 691 P.2d at 742.

## FACTS AND PROCEDURAL HISTORY

H.B.H. filed an action against John Doe and his wife,[1] seeking damages incurred when John Doe sexually molested the H. child on numerous occasions. At the time of the incidents, the Does had a State Farm homeowner's insurance policy and an umbrella policy. State Farm agreed to defend the Does under a reservation of rights. However, it filed a declaratory action in which it claimed that because sexual molestation was an intentional tort, the incidents were not covered by the policies.

On February 11, 1989, H.B.H. and the Does entered a *Damron* agreement which provided that the Does would withdraw their answer to the complaint and allow a default judgment to be entered against them. *See Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969). The Does agreed not to contest H.B.H.'s damages at the default hearing. In consideration, H.B.H.

---

1. We have abbreviated the plaintiff's name in the interests of the child. The defendants' ficti-
tious name of "Doe" has been used throughout these proceedings.

agreed to limit the Does' personal liability to $32,500 and to collect any additional amount from State Farm.

Prior to the hearing on damages, State Farm moved to intervene pursuant to Rule 24(a), *A.R.Civ.P.*[2] It claimed that it had a substantive interest in the outcome of the litigation because it could be bound by the principle of *res judicata* to the determination of the Does' liability and the amount of damages if its policies were found to cover the incidents at issue in the declaratory action. The trial court denied the motion.

Pursuant to the *Damron* agreement, the Does did not cross-examine H.B.H.'s witnesses or present any evidence at the default hearing on damages. The trial court entered judgment in favor of H.B.H. for $900,000. State Farm timely appealed the order denying its motion to intervene and the judgment.

## DISCUSSION

State Farm argues that intervention under Rule 24(a) was appropriate pursuant to three court of appeals' cases: *Anderson; Stufflebeam v. Canadian Indem. Co.,* 157 Ariz. 6, 754 P.2d 335 (App.1988); and *McGough.* H.B.H. and the Does respond that our supreme court implicitedly overruled *McGough* and precluded intervention in *United Services Auto. Assoc. v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987). They also argue that the reasoning in *Stufflebeam* and *Anderson* does not allow intervention. Because the determination whether intervention was appropriate depends almost entirely on an understanding of these cases, we discuss each one.

The earliest case is *McGough,* in which the insured was the pilot of a plane involved in a crash which resulted in the death of a passenger. The owners of the plane had a $100,000 liability policy covering it, and the insured had a $1,000,000

policy. After the insurer informed the insured that there was no coverage because the plane was considered experimental, the insured filed a declaratory judgment action against the insurer to determine coverage. Shortly thereafter, the decedent's survivors filed a wrongful death action against the insured.

The insurer agreed to defend the insured in the wrongful death action under a reservation of rights; however, the insured refused to allow the insurer to defend him unless it acknowledged coverage. At the same time, the plaintiffs in the wrongful death action and the insured entered into a covenant not to execute, stipulating that judgment on liability and damages would be entered against the insured for $1,100,-000, that the plaintiffs would not execute on the judgment against the insured, that the owners' insurer would pay $100,000, and that any rights held by the insured against his insurer would be assigned to the plaintiffs.

The insurer moved to intervene on its own behalf, claiming that until the coverage question was resolved, it retained a vested interest in the outcome of the wrongful death claim. The trial court denied the motion and entered judgment against the insured in the stipulated amount. The insurer appealed.

In addressing whether the insurer had a right to intervene pursuant to Rule 24(a), this court first concluded that the insurer had shown the requisite interest in the action. The court then considered whether the insurer had the right to intervene even though it had agreed to defend the insured under a reservation of rights. The court noted that the insurer could not intervene if it had completely refused to defend the insured. 143 Ariz. at 32, 691 P.2d at 744 (citing *Edler v. Edler,* 9 Ariz.App. 140, 142–43, 449 P.2d 977, 979–80 (1969)); *see*

**2.** Rule 24(a) provides, in pertinent part:
  Intervention of right. Upon timely application anyone shall be permitted to intervene in an action:

   •   •   •   •   •

  (2) when the applicant claims an interest relating to the property or transaction which is

the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

*also Damron,* 105 Ariz. at 155, 460 P.2d at 1001.

Relying on *Damron,* which recognized that an insurance company can defend under a reservation of rights without waiving its right to later contest coverage, 105 Ariz. at 155, 460 P.2d 1001, the court concluded that an insured could not condition the insurer's right to defend on the insurer's agreement to waive its right to litigate questions of coverage. 143 Ariz. at 33, 691 P.2d at 745. Because the insurer's action did not constitute a refusal to defend, the insured could not refuse the insurer's offer to defend, and the insurer did not give up its right to intervene in the action. *Id.* at 34, 691 P.2d at 746. The judgment was reversed and the matter remanded to allow the insurer to intervene.

Approximately three years later, *Morris* was decided. It arose from a tort action against two insureds after one of them shot the plaintiff. A question of coverage was raised, but the tort action was settled when the insureds stipulated to a $100,000 judgment to be collected solely from the insurer in exchange for a covenant not to execute against the insureds. The insurer then filed a declaratory judgment action, claiming that it was not obligated to pay the judgment because it had been discharged from its duty to indemnify the insureds when they breached their contractual duty to cooperate by settling the tort action. The trial court entered summary judgment in favor of the insurer on that basis.

The question before the supreme court was whether an insurer could assert a policy's cooperation clause to prevent an insured being defended under a reservation of rights from protecting himself by settling. 154 Ariz. at 118, 741 P.2d at 251. The court noted that when an insurer performs its obligation to defend, the *cooperation* clause prevents the insured from settling on his own. Under such circumstances, the insured could face the possibility of a trial verdict being higher than the policy limits or of the judgment not being covered by the policy at all.

The better result would permit the insurer to raise the coverage defense, and also permit an insured to protect himself from the risk of noncoverage or excess judgment, while at the same time protecting the insurer from unreasonable agreements between the claimant and the insured.... By raising the coverage defense, even in good faith, the insurer places the insured in a position where settlement may be necessary for his own protection rather than from a lack of cooperation with the insurer.

*Id.* at 119, 741 P.2d at 252. The court concluded that "[a]n insured being defended under a reservation of rights may enter into a *Damron* agreement without breaching the cooperation clause." *Id.*

The court, concerned that an insured "may be persuaded to enter into almost any type of agreement or stipulation by which the claimant hopes to bind the insurer," went on to determine whether the insurer would be bound by the agreement. *Id.* 154 Ariz. at 119–20, 741 P.2d at 252–53. In response to the insurer's claim that it had an absolute right to relitigate all aspects of the case, the court observed that "[the insurer's] absolute position would destroy the purpose served by allowing insureds to enter into *Damron* agreements because claimants would never settle with insureds if they never could receive any benefit." *Id.* 154 Ariz. at 120, 741 P.2d at 253. However, the court also recognized that an insured "might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance." *Id.* It concluded that any finding of liability or amount of damages would not be binding on the insurer "unless the insured or claimant can show that the settlement was reasonable and prudent." *Id.*

The test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insured's position would have settled for on the *merits* of the claimant's case. This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial. [Citations omitted.]

*Id.* at 121, 741 P.2d at 254 (emphasis in original); *see also* 7C J. Appleman, *Insurance Law and Practice* (1979) § 4690 at 222–29; A. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds* (1982) § 5.16 at 212–23, § 6.25 at 275–76.

*Morris* does not involve intervention and the court did not address whether an insurer should be permitted to intervene on its own behalf for the limited purpose of contesting the reasonableness of a settlement agreement in proceedings between the injured party and the insured. The decision does make clear, however, that a settlement between those parties is not binding on the insurer unless the parties to the settlement can show that it was "reasonable and prudent." 154 Ariz. at 120–21, 741 P.2d at 253–54.

In *Stufflebeam*, Division Two of this court, relying on *McGough* and *Morris*, held that an insurer was bound by an agreement between the injured party and the insured. 157 Ariz. at 9, 754 P.2d at 338. The insurer had agreed to represent the insured in a personal injury action under a reservation of rights. The insured, however, entered an agreement with the injured party which provided that the insured would consent to a default judgment in exchange for the injured party's agreement to pursue collection from the insurer only. Pursuant to the agreement, the insured allowed the court to determine the amount of damages based exclusively on evidence presented by the injured party at the default hearing.

The insurer contended on appeal that the insured was bound by the cooperation clause of the policy, which the insured had violated by entering the agreement with the injured party, and that the judgment was unreasonable. *Id.* at 8, 754 P.2d at 337. The court disagreed, reasoning:

> There is no indication in the record of any fraud or collusion between [the injured party] and [the insured]. [The insurer] has neither presented us with a factual issue on the question of fraud or collusion nor has it shown any irregularity in the default proceeding. We note

that [the insurer] failed to respond to [the insured's] attorney's letters about his plans in the lawsuit, that [the insurer's] attorney signed the stipulation for substitution of counsel without comment and that [the insurer] then withdrew from the case and paid no further attention to it. *It never moved to intervene in the lawsuit, and it has never moved to vacate the default judgment. See McGough v. Insurance Company of North America,* 143 Ariz. 26, 691 P.2d 738 (App.1984).

*Id.* 157 Ariz. at 9, 754 P.2d at 338 (emphasis added). Thus, although not stating that intervention would have been appropriate, the court did base its holding affirming the judgment, at least in part, on the insurer's failure to intervene or take other appropriate action to contest the judgment.

The final case, *Anderson*, was decided by this court. The insurer appealed the trial court's denial of its motion to intervene in a personal injury action. The plaintiff, who was the injured party, had filed a lawsuit against the insured, who had a $30,000 policy on the vehicle involved in the accident. The insurer offered to settle the claim for the policy limits. During discovery, however, the plaintiff learned that the insured had a second policy with the same insurer on another vehicle. The insurer maintained that there was no coverage under the second policy and filed a declaratory judgment action. The plaintiff and the insured subsequently entered a *Damron* agreement which stipulated that judgment could be entered in favor of the plaintiff in an amount to be determined by the court, that $3.9 million would compensate the plaintiff for his damages, and that the plaintiff would not execute the judgment against the insured. While the *Damron* agreement was under negotiation, the insurer filed a motion to intervene, which the trial court denied. At the evidentiary hearing on damages, the insurer was not represented and the insured did not present any evidence. The trial court entered judgment for $3.9 million.

On appeal, the insurer claimed that the trial court had wrongly denied its Rule

24(a) motion to intervene. This court agreed.

In the instant case, [the insurer] unconditionally acknowledged its duty to provide a defense and tendered its policy limits under the policy insuring the car involved in the accident. It was clearly not defending under a reservation of rights as to the policy on the vehicle involved in the accident. After discovery led the [plaintiff] to make a claim under the policy on another vehicle owned by [the insured], [the insurer] denied coverage under that policy. However, [the insurer] never denied its duty to defend [the insured] in the underlying tort litigation.

*Id.* 158 Ariz. at 362, 762 P.2d at 649. The court concluded that because the insurer sought to intervene on its own behalf, and had not committed any acts which would provide a basis for forfeiting its right to intervene, it could intervene. *Id.*

In response to the plaintiff's contention that the appeal was premature, the court explained:

*Morris* does not address a situation in which an insurer accepts unconditional liability on one policy, denies coverage under a second policy, provides a defense to all defendants, and seeks to intervene. *Morris* does not suggest that an insurance company has no right to intervene, if it requests leave to do so, in the underlying tort proceedings. While *Morris* concludes that an insurer may later challenge a settlement, it does not hold that an insurer must wait to litigate the issues.

*Id.* 158 Ariz. at 363, 762 P.2d at 650 (emphasis added). Thus, *Anderson* appears to hold that it is error to deny an insurer's request to intervene to challenge the reasonableness of a settlement between the insured and injured party pursuant to *Morris.*

H.B.H. argues that *Morris* and *Stufflebeam* stand for the proposition that an insurer loses control over the litigation between the injured party and the insured when it defends under a reservation of rights and that it should not be permitted to intervene. The Does maintain that although State Farm had no right to intervene, it could later litigate whether the settlement was reasonable. H.B.H. and the Does both claim that allowing an insurer to intervene will restrict parties from entering *Damron* agreements and that intervention will result in unnecessary, complex litigation in the event that the insurer later is relieved from liability in a declaratory action regarding coverage.

According to *McGough,* an insurer defending under a reservation of rights is not refusing to defend. Therefore, the insurer has the right to intervene in a settlement between the insured and the injured party. The court in *Morris,* however, held that when an insurer defends under a reservation of rights, it "relinquishes to the insured control of the litigation ..." and the insured, therefore, is free to enter a *Damron* agreement. 154 Ariz. at 119, 741 P.2d at 252. Nevertheless, the agreement must be reasonable and prudent. *Id.* at 120, 741 P.2d at 253. Although *Morris* did not specify the method by which an insurer can test the reasonableness of an agreement between an insured and injured party, the burden of proving the reasonableness of the agreement is on the insured. *Id.*

State Farm maintains that it can only test the reasonableness of the agreement by intervening. H.B.H. and the Does maintain that the agreement was reasonable on its face because it left to the trial court the determination of the amount of damages, or, alternatively, that State Farm can litigate the reasonableness of the settlement by some unspecified method other than intervention after the coverage question is decided.

■ We find *Anderson* persuasive despite its factual differences. In *Anderson,* we stated that *Morris* did not suggest that an insurer could not intervene. 158 Ariz. at 363, 762 P.2d at 650. We concluded that although an insurer later could contest the reasonableness of an agreement, "it would serve the purpose of judicial economy to permit the insurer to take this opportunity when all of the parties are involved and can

present evidence to the court on the issue at one hearing." *Id.*

H.B.H. and the Does contend that *Anderson* is distinguishable because in that case the insurer unconditionally defended the insured on one of the two policies involved. They argue that because the insured was unconditionally defended, the insurer had a right to intervene. This case, they maintain, differs because the insurer did not unconditionally defend the insured.

We find this distinction insufficient to overcome the *Anderson* rationale. While the insurer in *Anderson* tendered the policy limits under the policy for which it did not deny coverage, any liability above that amount would have been under the policy for which it disputed coverage. What the court emphasized was that the insurer never denied its duty to defend the insured. 158 Ariz. at 362, 762 P.2d at 649. The same can be said here, as State Farm never suggested that it did not have a duty to defend the Does and in fact hired counsel to represent them.

The court in *Anderson* held that intervention is, in certain situations, the appropriate method by which an insurer can litigate the reasonableness of an agreement. 158 Ariz. at 361, 762 P.2d at 648. The settlement agreement in *Anderson* included a suggested amount of damages, and an evidentiary hearing was held solely for the purpose of assessing damages. We concluded that intervention would have been appropriate so that all of the involved parties, including the insurer, could present evidence at that hearing. *Id.* at 363, 762 P.2d at 650.

In *Stufflebeam,* as in this case, the insured's answer was withdrawn so that the insured's default on the question of liability could be entered pursuant to the parties' agreement and a hearing solely on damages was held. The court on appeal suggested that the insurer could have intervened to contest the reasonableness of the agreement. 157 Ariz. at 9, 754 P.2d at 338.

H.B.H. submits that because the trial court awarded damages based upon an evidentiary hearing, rather than upon the parties' agreed determination of the amount of

damages, State Farm's interests were adequately protected and the amount of damages was, on its face, reasonable. The evidentiary hearing was, however, completely one-sided, without any cross-examination or opposing testimony or evidence. It thus was an inadequate substitute for a hearing with the participation of all parties, including the intervenor. *See Morris,* 154 Ariz. at 121, 741 P.2d at 253. In light of State Farm's express right to question the reasonableness of the agreement, *see Morris,* 154 Ariz. at 120, 741 P.2d at 252, the most appropriate time to do so is at the evidentiary hearing on damages when all the parties are present. *See Anderson,* 158 Ariz. at 363, 762 P.2d at 650.

The Does claim that allowing State Farm to intervene will result in more complex litigation, which ultimately may be unnecessary and a waste of judicial resources if State Farm is absolved from liability under the policy in the declaratory action. However, further litigation will be a certainty if State Farm is found liable under the policy. A possible solution to avoid unnecessary litigation would be to stay the default hearing on damages until after the coverage question is resolved.

H.B.H. and the Does maintain that allowing State Farm to intervene will defeat the practical effect of *Damron* agreements, as well as the holding in *Morris,* and will discourage such agreements in the future. They note that a large part of H.B.H.'s consideration for entering the *Damron* agreement was that she and the child would not have to face a trial or a contested hearing on damages. This may be true. However, this ruling will not affect or thwart the ability to settle questions of liability and to obtain guaranteed settlements from insureds personally. The risk is the same that the insurer will be later found not liable or that if it is liable, it will be able to contest the reasonableness of the judgment pursuant to *Morris.* Thus, H.B.H.'s concern that the child not be put through the rigors of unnecessary discovery and trial is unfounded if State Farm is determined to be liable under the policies in the declaratory action.

We conclude, therefore, that State Farm has a right to intervene pursuant to Rule 24(a) solely for the purpose of contesting the reasonableness of the damages award, and that it was error to deny its motion. Accordingly, the judgment is reversed and this matter is remanded for proceedings consistent with this opinion.

FIDEL, C.J., and TAYLOR, J., concur.