66 P.3d 74

Patricia A. HIMES, Guardian/Conservator of Holly Lyn Castano, an incapacitated adult; Patricia A. Himes, individually, Plaintiffs–Appellees,

Steven Duane Botma, Defendant–Appellee,

v.

SAFEWAY INSURANCE COMPANY, Intervenor–Appellant.

Nos. 1 CA–CV 01–0532, 1 CA–CV 02–0410.

Court of Appeals of Arizona, Division 1, Department A.

March 27, 2003.

34

Beale, Micheaels & Slack, P.C., by John A. Micheaels and Roush, McCracken, Guerrero, & Miller, by Charles D. Roush and Sanders & Parks, P.C., by Steven D. Leach, Phoenix, Attorneys for Plaintiffs–Appellees Himes.

Don Stevens, P.C., by Don C. Stevens, II, Phoenix, Attorneys for Defendant–Appellee Botma.

Jones, Skelton & Hochuli, P.L.C., by Donald L. Myles, Jr., Randall H. Warner, Phoenix, Attorneys for Intervenor–Appellant Safeway.

## OPINION

BARKER, Presiding Judge.

¶ 1 We examine in this opinion [1] the burden of proof and legal standard applicable in determining to what extent a *Damron/Morris* agreement [2] represents a reasonable settlement that is binding on an insurer.

---

1. Pursuant to Arizona Rule of Civil Appellate Procedure 28(g), other issues raised in this case are ruled upon in a memorandum decision filed this same date.

2. Throughout this opinion we utilize the term *"Damron/Morris"* agreement, *e.g. Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969) and *United Servs. Auto Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987), to refer to any agreement between a third-party claimant and insured whereby the insured consents in any fashion to liability and enters into an agreement providing the third-party claimant with the insured's breach of contract and bad faith claims against the insurer in exchange for a covenant not to execute against the insured. We recognize that lawyers utilize terms based on other cases, e.g., *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987) and *State Farm Mut. Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 812 P.2d 1002 (App.1990), to describe the different varieties of agreements of this nature.

By merely choosing to use the term "Damron/Morris" agreement, we do not intend to influence the circumstances under which an insurer has the right to be heard on the reasonableness of a settlement amount or damages figure. We define the burden of proof and standard when the insurer, as here, has the right to be heard on the reasonableness of damages. There are *Damron/Morris* agreements under which an insurer has no right to contest damages on the basis of reasonableness, but only on the basis of

## I.

¶ 2 Holly Castano ("Castano") was severely injured in an automobile accident. Without attempting to fully describe her injuries, we note that Castano suffered a diffuse axonal injury to her brain which resulted in spastic quadreparesis.[3] She has no use of her left arm or leg. She can slightly move her right leg and has limited use of her right arm. She has the ability to communicate but suffers distorted long term and short term memory problems. Some evidence put the cost of her past and projected medical care at $7 million.

¶ 3 Castano's mother, Patricia Himes ("Himes"), sued Steven Botma ("Botma") on behalf of herself and Castano. Botma, an insured of Safeway Insurance Company ("Safeway"), was the driver of the car which caused the collision with the vehicle in which Castano was a passenger. Safeway insured Botma under a policy which provided him the minimum statutory limits of $15,000 per person and $30,000 per accident. Himes also sued General Motors Corporation ("GM") and Joe Gambino Chevrolet ("Gambino"), the manufacturer and distributor, respectively, of the car in which Castano was riding. Himes contended that Castano's passenger seat was defective and collapsed during the collision, causing her injuries to be more severe.

¶ 4 Safeway retained counsel for Botma. That counsel filed an answer and counterclaim on Botma's behalf. The counterclaim alleged that Botma's liability had been extinguished by Himes' acceptance of a policy limits settlement. The counterclaim was severed for trial and tried to a jury. The jury found in favor of Himes, concluding that there had been no settlement.

¶ 5 After the trial against Botma was completed, and the case against GM and Gambino was set for trial, Botma and Himes entered into a *Damron/Morris* agreement. Botma consented to have judgment entered against him in the amount of $12 million and assigned all of his rights against Safeway to Himes, and in return Himes agreed not to execute against Botma's personal assets. The basis for the *Damron/Morris* agreement was Botma's contention that Safeway had breached its duty to give equal consideration to Botma's interests by failing to settle the case within policy limits, thereby freeing Botma to negotiate a settlement to protect his personal assets.

¶ 6 Judgment was entered against Botma in accordance with the *Damron/Morris* agreement on March 21, 2000. The product liability claim against GM and Gambino proceeded to trial. After a nine-week trial, and while the jury was deliberating, the claims against GM and Gambino were settled and dismissed with prejudice.

¶ 7 Prior to entry of the stipulated judgment, Safeway was allowed to intervene as of right under Arizona Rule of Civil Procedure 24(a). Safeway filed a motion, and then an amended motion, for new trial and for judgment as a matter of law as to the verdict and judgment in favor of Himes on Botma's counterclaim. The trial court denied the motion.[4] Safeway also requested, and was granted, an evidentiary hearing as to the reasonableness of the settlement between Botma and Himes. Safeway also moved the trial court to withhold entry of the stipulated judgment until the amount of the judgment had been proved to be reasonable. The trial court denied this request.

¶ 8 Following the evidentiary hearing, the trial court ruled that the $12 million *Damron/Morris* agreement was reasonable to the extent of $9 million. Himes then moved for

---

fraud or collusion. *E.g., Damron*, 105 Ariz. 151, 460 P.2d 997. Our opinion is not directed to those agreements. We address in section III.C why this particular agreement is subject to a review for reasonableness.

3. Quadreparesis is incomplete paralysis in all four limbs. Dorland's Illustrated Med. Dictionary 970 (John P. Friel ed., W.B. Saunders Co.1981).

4. Safeway appealed this judgment. The Memorandum Decision referenced in ¶ 1 affirmed this judgment. Also pending in federal district court is a garnishment proceeding by Himes seeking payment from Safeway of the $12 million judgment against Botma and a declaratory judgment action filed by Safeway seeking a judgment that Botma had breached the cooperation clause in the insurance policy. Himes counterclaimed in the declaratory action for breach of contract and bad faith.

reconsideration of this determination. After briefing, the trial court modified its earlier decision and found the entire $12 million settlement to be reasonable. It is this determination that forms the primary focus of our analysis.

¶ 9 Safeway next filed a motion for new trial and judgment as a matter of law on the issue of reasonableness. This motion was denied and Safeway filed a timely notice of appeal.

## II.

¶ 10 The key issues presented in this case deal with the burden of proof and applicable standard in determining an appropriate settlement amount after a *Damron/Morris* agreement has been made. We also address the evidentiary issues and factors considered in determining the reasonableness of a settlement pursuant to a *Damron/Morris* agreement. Finally, we consider whether the trial court erred in entering the judgment prior to a determination of reasonableness and whether this particular *Damron/Morris* agreement is an illegal and unenforceable contract.

## III.

¶ 11 Safeway contends that the "purpose of a *Morris* Hearing is to obtain an independent determination from the court on reasonableness." [5] Himes, on the other hand, in the motion for reconsideration granted by the trial court, urged that "the role of the trial court in passing on the amount of a proposed agreement under [*Damron* and *Morris*] is to enter judgment in accordance with the agreement of the parties unless (1) fraud or collusion has been shown or (2) the amount of the agreement is per se unreasonable." The trial

court apparently accepted Himes' argument. In granting the motion for reconsideration it stated, in part, that:

> It is not appropriate for this Court to substitute its belief of what was reasonable absent evidence to the contrary. This Court has no evidence that the agreement was unreasonable.

Himes' position, as reflected in this statement by the trial judge, is wrong. It is wrong both as to the burden of proof and as to the applicable standard in determining whether a settlement amount following (or in) a *Damron/Morris* agreement is reasonable and thus binding upon the insurer.

## A.

¶ 12 As to the burden of proof, Himes' position—that a trial court must approve a settlement as reasonable "unless ... the amount of the agreement is per se unreasonable" [6]—is directly contrary to our cases. In *Morris*, our supreme court noted case law to the effect that

> neither the fact nor amount of liability to the claimant is binding on the insurer *unless the insured or claimant can show that the settlement was reasonable and prudent.*

154 Ariz. at 120, 741 P.2d at 253 (citing *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn.1982)) (emphasis added). *Morris* went on to plainly declare that "the indemnitor will be liable to the indemnitee *to the extent that the indemnitee establishes* that the settlement was reasonable and prudent under all the circumstances." 154 Ariz. at 120, 741 P.2d at 253 (emphasis added). The burden is squarely on the insured to prove reasonableness of the settlement amount that is either

---

5. We use the terms *"Morris* hearing" and "reasonableness hearing" interchangeably in this opinion. They refer to an evidentiary hearing where the stipulated damages amount, or stipulated judgment, in a *Damron*/Morris agreement (as we have described that term, *supra* at ¶ 1) is subject to review *or* the amount has been left open and is to be determined by the trial judge or fact finder without reference to a figure stipulated to by the parties.

We likewise use the term "trial judge" and "finder of fact" in an interchangeable fashion with reference to the person or entity, be it judge

or jury, that determines the extent to which a stipulated amount or judgment is reasonable. We do so as we do not wish to appear to decide the issue of whether a reasonableness hearing can only be conducted before a trial judge or if it is subject to the constitutional or other provisions providing for a jury determination. *See* Ariz. Const. art. 6, § 17; Ariz. R. Civ. P. 38. That issue has not been addressed in this case.

6. Whether the agreed upon amount is fraudulent or collusive is not at issue in this case.

stipulated to or sought. *Strojnik v. Gen. Ins. Co.*, 201 Ariz. 430, 432, ¶ 5, 36 P.3d 1200, 1202 (App.2001); *Munzer v. Feola*, 195 Ariz. 131, 136, ¶ 29, 985 P.2d 616, 621 (App.1999).

¶ 13 As Himes argues, however, the trial judge noted this burden of proof as being on the insured in making his ruling.[7] He expressly cited *Morris* and noted the burden was on the claimant. In applying that burden, however, it is clear that the trial judge either (a) accepted an erroneous legal argument made by Himes, that the claimant satisfied her burden unless the settlement amount was "unreasonable per se" or that the burden shifted to the insurer upon a prima facie showing by the claimant, or (b) engaged in a clear error of fact by finding that "[t]his court has no evidence that the settlement was unreasonable."

¶ 14 As to the erroneous legal arguments made to the trial judge, we have already noted that the view of *Morris* advanced by Himes is simply not the law. A trial judge must not "pass" on a settlement amount, even if stipulated to by experienced lawyers acting in good faith, "unless it is per se unreasonable." The claimant has an affirmative duty of proof that the agreement is reasonable. *Morris*, 154 Ariz. at 120, 741 P.2d at 253. Liability only may exist "to the extent" the claimant proves the amount reasonable. *Id.*

¶ 15 Himes also argued in her motion for reconsideration that *Morris* should be interpreted in light of *Pruyn v. Agricultural Ins. Co.*, 36 Cal.App.4th 500, 42 Cal.Rptr.2d 295 (1995). In that case, a California appellate court ruled that a negotiated settlement "will raise an evidentiary presumption in favor of the insured (or the insured's assignee) with respect to the existence and amount of the insured's liability. The effect of such a presumption is to shift the burden of proof to the insurer to prove that the settlement was unreasonable or a product of fraud or collusion." *Id.* at 299. This is not the law in Arizona. *Morris*, 154 Ariz. at 120–21, 741 P.2d at 253–54. We reject it.[8] As we discuss in detail below, there is no incentive for an insured in such a setting to agree to a settlement amount that is reasonable. *Id.* In fact, the incentive is to accept whatever number is proposed to avoid "the sharp thrust of personal liability." *Id.* at 118, 741 P.2d at 251 (quoting *Helme*, 153 Ariz. at 137, 735 P.2d at 459). Thus, we find no basis for a presumption of reasonableness to apply to a settlement amount reflected in a *Damron*/Morris agreement.

¶ 16 Even if we have misapprehended the trial judge's determination of what constituted the proper burden of proof, and he appropriately rejected the view of *Morris* argued to him by Himes, he nonetheless made a clear error of fact. The trial judge noted that there was "no evidence that the agreement was unreasonable." This is plainly contradicted by the record.

¶ 17 We need not discuss in detail the testimony of all the lawyers who opined as experts as to the reasonableness of this settlement. Suffice it to say that the range

---

7. The full text of the pertinent paragraphs of the trial judge's ruling is as follows:

The *"Damron"* agreement was made fairly and with notice to the insurer, Safeway. This is a requirement of *USAA v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987) for such an agreement to be upheld. Also, the burden is on the insured, Mr. Botma (here plaintiffs by agreement), to demonstrate that the "... judgment was not fraudulent or collusive and was fair and reasonable under the circumstances." *Morris*, supra at 121, 741 P.2d 246. The insured must show the entire settlement agreement was reasonable and prudent. In other words, what a reasonable and prudent person in Mr. Botma's position would have settled for on the merits of the case at the time of [sic] the settlement was entered into. It is not appropriate for this Court to substitute its belief of what was reasonable absent evidence to the contrary. This Court has no evidence that the agreement was unreasonable.

This Court concludes that the settlement entered into between the plaintiffs and Mr. Botma for 12 million dollars was reasonable and prudent and there is no evidence of fraud or collusion. The Motions for Reconsideration are granted and denied to the extent set forth above.

8. In a footnote, Himes also argues that the burden should shift to the insurer due to the allegation that Safeway breached the duty to give equal consideration to settlement offers. For the reasons given in section III.C, *infra*, the clear mandate from *Morris*, and the lack of financial incentive on the part of the insured, we reject this argument as well. The burden does not shift.

provided was from $3 million to $18.75 million for Botma's share of the damages. Himes argues that it is unrealistic to consider that a particular personal injury case has a specific settlement value, as opposed to a "reasonable range of settlement." We do not disagree with this concept in theory. However, to suggest that a range from $3 million to $18.75 million [9] is a "reasonable range" and any settlement within that range must be approved by the trial court, is misplaced.

¶ 18 For instance, Robert Schmitt (Safeway's expert) testified that the reasonable settlement value for this matter was $6 to $9 million with liability for that amount being allocated on a 50/50 basis between Botma and GM. This leaves a settlement range of $3 to $4.5 million for Botma. Without more, this expert testimony, which was elicited at the *Morris* hearing, was "contrary evidence" to the reasonableness of the $12 million settlement amount that the trial court approved.

¶ 19 Thus, the trial court's statement that, "[t]his court has no evidence that the agreement was unreasonable," was not only a a misapprehension of the burden of proof (as described above), but a clear error of fact. Reversal is required.

### B.

¶ 20 We now turn to a consideration of the applicable standard for determining a reasonable settlement pursuant to a *Damron/Morris* agreement. Our consideration, as we note earlier, is the same whether the amount or judgment is stipulated to by the parties or left open to be determined without a specific stipulated amount or judgment. Under any of these scenarios the insured or claimant must prove a reasonable amount by preponderance of the evidence.[10] We begin by focusing on the basis for the trial judge's determination as expressed in the ruling granting the motion for reconsideration.

¶ 21 Himes argued, in the motion for reconsideration granted below, that "[i]n determining whether the agreement was reasonable, the Court is not required to nor should

it select a specific dollar value representing the Court's opinion of the reasonable value of the plaintiffs' claim. It should only determine that, given the totality of the circumstances surrounding the claim, it was not unreasonable for defendant Botma and his attorney to agree to the $12 million settlement." Again, the trial judge apparently accepted the argument as it expressly noted that "it is not appropriate for this Court to substitute its belief of what was reasonable absent evidence to the contrary." Himes' argument, and the trial court's acceptance of it, are in error.

¶ 22 Initially, we note that the primary purpose of a reasonableness hearing is to attempt to re-create the same result that would have occurred if there were an arm's-length negotiation on the merits of the case between interested parties. *Morris* makes this plain. It notes that insureds, when faced with the choice between personal liability or a judgment enforceable only against their insurer, would be "quite willing to agree to anything as long as plaintiff promised them full immunity." *Morris*, 154 Ariz. at 120, 741 P.2d at 253 (quoting *Miller*, 316 N.W.2d at 735). *Morris* resolves this dilemma by providing that the insured or claimant must prove the extent to which any settlement amount is reasonable. *Id.* It states:

> If [claimant] cannot show that the entire amount of the stipulated judgment was reasonable, he may recover only the portion that he proves was reasonable. If he is unable to prove the reasonableness of any portion of the judgment, [the insurer] will not be bound by the settlement.

*Id.* at 121, 741 P.2d at 254. Thus, the trial judge is required to do exactly what Himes urges he should not: the judge must determine, based on the evidence presented at the hearing, to what extent the settlement is reasonable. This requires the finder of fact to determine a specific dollar amount as reasonable as it is an amount, not a range, that will be enforced.

---

9. Himes argues the range is from $11.75 million to $18.75 million but this argument ignores the testimony of Safeway's expert, *infra* at ¶ 18, that the range was $3 million to $4.5 million.

10. For a more detailed discussion of this point see ¶ 24 and section V, *infra*.

¶ 23 In this setting, what is the standard to determine the extent to which a stipulated settlement is reasonable? Again, the primary instruction is that a reasonable settlement should reflect what would have occurred if there had been an arm's-length negotiation between interested parties. *Morris* states:

The test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case.

*Id.* (emphasis in original); *see also Parking Concepts Inc. v. Tenney*, 203 Ariz. 562, 564, ¶ 7, 58 P.3d 44, 46 (App.2002) (citing *Morris* test); *Munzer*, 195 Ariz. at 136, ¶ 31, 985 P.2d at 621 (same); *H.B.H. v. State Farm Fire & Cas. Co.*, 170 Ariz. 324, 327, 823 P.2d 1332, 1335 (App.1991) (same). The "reasonably prudent person" referenced in this test means a person who has a stake in the outcome. It means a person who is making decisions as though the money that pays the settlement comes from his or her own pocket. This is not a test of what a reasonably prudent person would settle the case for with someone else's funds. It is what a "reasonably prudent person" would pay from his or her own resources, assuming they are sufficient, "on the merits" of the case. *See id.* For purposes of determining reasonableness in a *Damron/Morris* agreement, a "reasonably prudent person" is defined as a person who (1) has the ability to pay a reasonable settlement amount from his or her own funds [11] and (2) makes a settlement decision as though the settlement amount came from those personal funds. Only by applying the test in this fashion can the lack of arm's-length negotiation inherent in a Damron/Morris agreement be overcome and re-placed with a standard by which an insurer not party to the agreement may be bound.

¶ 24 This standard applies in every case in which the settlement represented by a *Damron*/Morris agreement is subject to a review for reasonableness, whether the amount or judgment is stipulated to or whether the parties leave the amount open.[12] The trial court here was under the misimpression that it was not to "substitute its belief of what was reasonable *absent evidence to the contrary.*" On the contrary, in *any Damron/Morris* case, where the damages are subject to review for reasonableness, it is the absolute duty of the finder of fact to evaluate the evidence presented and determine what settlement amount the insured has proved reasonable by a preponderance of the evidence. *Assoc. Wholesale Grocers, Inc., v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65, 87 (1997) (the trial court must be provided information to "make an independent evaluation of the reasonableness of the settlement").[13] For instance, even if the only expert testimony had been that of Himes, the finder of fact must still determine to what extent the insured has proved the settlement was reasonable. *Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 562, 880 P.2d 1103, 1108 (App.1993) (a jury " 'may accept everything a witness says, or part of it, or none of it,' and, with regard to expert testimony, 'You may accept it or reject it, in whole or in part, and you should give it as much weight as you think it deserves.' ")

¶ 25 This case provides an example of why the dynamics in a *Damron/Morris* agreement make this standard necessary and why it must be applied in each case where the insurer is entitled to contest the reasonableness of damages. Here, the insured's lawyer testified that although he considered the $12 million settlement to be reasonable,

11. This element is discussed further in section III.C, *infra.*

12. Leaving the amount unspecified still means that the finder of fact must determine, by the same preponderance of the evidence, what amount the parties to the agreement have proved to be a reasonable amount. The standard of proving reasonableness, as described herein, *supra* ¶¶'s 20–22, does not change. There is simply no specific dollar amount agreed upon by the parties. Each party to the agreement may provide their proposed amounts (or range) as either part of the evidence, or argument based upon the evidence, at the reasonableness hearing.

13. There is no issue here, as there was in *Americold*, of the trial judge being given sufficient evidence upon which to base a ruling. The error here was in the burden of proof and legal standard applicable to that evidence.

he believed he "could have negotiated a lower amount if [he] wanted to." Applying the standard from *Morris,* what reasonably prudent person when faced with settlement negotiations utilizing her own resources, would not send her attorney back to negotiate a lower figure? The attorney testified:

Q Okay. Do you think you could have negotiated a lower amount if you wanted to?

A Yes.

Q Why didn't you do it?

A Because I felt it was within the range what I expected and I had predicted. *I felt that it really didn't make any difference to Botma. ... I felt I didn't have any further obligation to negotiate a better excess judgment against Safeway[.]*

(Emphasis added.) We do not cite this testimony to be critical of counsel's actions. Indeed, counsel's actions were not only perfectly consistent with his appropriate role, they were compelled by his legal and ethical duties. Not only does a soon-to-be-released insured not have a financial incentive to negotiate a reasonable settlement, the insured's counsel may run afoul of his legal and ethical duties if that counsel aggressively attempts to negotiate a *Damron/Morris* agreement with a lower settlement amount. Such negotiations may put in peril the very agreement that could absolve his or her client (the insured) from all personal liability. *See Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 200 Ariz. 146, 150, ¶ 16, 24 P.3d 593, 597 (Ariz.2001) ("when a conflict actually arises, and not simply when it potentially exists, the lawyer's duty is exclusively owed to the insured and not the insurer. Because a lawyer is expressly assigned to represent the insured, the lawyer's primary obligation is to the insured, and the lawyer must exercise independent professional judgment on behalf of the insured.") (citations omitted); *see also Parsons v. Continental Nat. Am. Group,* 113 Ariz. 223, 227, 550 P.2d 94, 98 (1976); Ariz. R. Sup.Ct. 42, ER 1.8(f)(2)-(3).[14] Insured's counsel's own malpractice carrier would likely come calling if counsel's aggressive attempts to negotiate a lower number resulted in no agreement at all.

■ ¶ 26 We cite counsel's testimony because it clearly makes the point that there are legal and ethical reasons, aside from the obvious lack of a client negotiating with his or her own resources, that a *Damron/Morris* agreement is simply not (nor can it be) an arm's-length negotiation. In this case, for instance, we venture to say that no reasonable person in an arm's-length negotiation, if told by her lawyer that a settlement could be negotiated more favorably, would do anything other than instruct that lawyer to so proceed. Here, however, the lack of financial incentives on the part of the insured did not prompt it; and counsel's primary legal and ethical responsibilities to his client limited it. Thus, the reasonableness test set forth above must be applied to every such agreement in which the insurer is entitled to contest the reasonableness of damages. The test is necessary to replace the strong and compelling dynamics that lead away from a reasonable damages figure as part of (or following) a *Damron/Morris* agreement.

## C.

■ ¶ 27 Himes also argues that no reasonableness hearing was required in this case "where the carrier has breached its duty

---

**14.** Ethical rule 1.8(f)(2)-(3) provides that "A lawyer shall not accept compensation for representing a client from one other than the client unless: ... (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by ER 1.6."

This ER goes to the ethical dilemma that is presented by the insured's counsel being in a position of negotiating a judgment against the insurer who is paying that counsel's bill and with whom that counsel may have a long-standing relationship. If the insured's counsel fails to reach an agreement, due to attempting to negotiate a lower figure, insured's counsel may be concerned that it could be argued that counsel was inappropriately favoring the insurer (who is paying counsel's bill and with whom counsel may wish to maintain an ongoing professional relationship for purposes of performing future legal work) over the insured (who is not paying counsel's bill and from whom there may be no prospect of future legal work). This is another part of the dynamic that works against the damages figure in a *Damron/Morris* agreement being a reasonable one.

regarding settlement within policy limits." It is the alleged breach of this duty that forms the basis of Himes' pending bad faith claim.[15]

¶ 28 Himes correctly asserts that in *Morris* there was no breach of any duty on the part of the insurer, merely a reservation of rights. Here, there was no reservation of rights upon which the *Damron*/Morris agreement was based; it is an alleged breach of the insurer's duty to give equal consideration to settlement offers upon which Himes relies to enter into this agreement. *See Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 164 Ariz. 286, 289, 792 P.2d 749, 752 (1990) ("It is settled law in Arizona, based on a covenant of good faith and fair dealing, that an insurance company owes its insured a duty of good faith in deciding whether to accept or reject settlement offers.") Thus, goes the argument, no reasonableness hearing was required and any errors in conducting it were of no consequence.

¶ 29 Himes is correct in asserting that no Arizona case has squarely addressed whether a reasonableness hearing is required in a case based on the alleged breach of the duty to give equal consideration to settlement offers. We recently, however, dealt with the issue of whether an insurer could intervene in a damages hearing following a *Damron/Morris* agreement in the face of an alleged breach of this duty. *Mora v. Phoenix Indem. Ins. Co.*, 196 Ariz. 315, 996 P.2d 116 (App.1999). We held that there were significant differences between an insurer that had provided a defense which entitled it to intervene, *e.g. H.B.H v. State Farm Fire & Cas. Co.*, 170 Ariz. at 331, 823 P.2d at 1339, and an insurer that provided no defense and was consequently only able to attack a judgment for collusion or fraud as in *Damron*, 105 Ariz. at 155, 460 P.2d at 1001. *Mora*, 196 Ariz. at 319–20, ¶¶'s 17–18, 996 P.2d at 120–21. We stated:

> whether intervention will be allowed turns on whether there was a complete breach of the duty to defend, and not, as [claimant]

suggests, on whether the insured was released from its duty to cooperate with the insurer.

*Id.* at 319, ¶ 17, 996 P.2d at 120. Thus, where there was no breach of the duty to defend, intervention was allowed.

¶ 30 We believe *Mora* was well-reasoned and that the principles it relied upon apply here. Safeway, by meeting its duty to defend, was entitled to a reasonableness hearing on the issue of damages in spite of the alleged failure to treat settlement offers with equal consideration. The errors at the reasonableness hearing cannot be excused on the ground that there was no entitlement to such a hearing.

#### D.

¶ 31 Based on the foregoing, it is clear that the insurer was entitled to contest damages for reasonableness and that the trial judge erred in making that determination. Because of that we remand for a new evidentiary hearing on the reasonableness of the settlement. We offer no opinion as to whether the stipulated figure is, or is not, reasonable. We remand so that the proper legal standard and burden of proof may be applied.

#### IV.

¶ 32 Safeway also contends that the trial judge erred by either not admitting certain evidence or by failing to consider other evidence which was admitted. Safeway's argument pertains in part to the consideration of GM's liability and the fact and amount of Himes' settlement with GM. Because the admissibility, and weight, of evidence is necessarily impacted by applying the appropriate legal standard to the claims at issue, *see Yauch v. S. Pacific Trans. Co.*, 198 Ariz. 394, 401, ¶ 19, 10 P.3d 1181, 1188 (App.2000) (admissibility of evidence determined by considering facts of consequence in the context of the substantive law), and that standard has been misapplied here, we vacate the prior evidentiary ruling as to GM. We make no

---

15. If Himes prevails on her bad faith claim in federal court, then the reasonableness figure for damages as determined in this action becomes operative. If Himes does not prevail on her bad faith claim, then there is no basis for liability against the insurer to collect the reasonableness figure arrived at in this litigation.

**42**

determination as to whether such evidence is or is not admissible, but leave that to the sound discretion of the trial judge, applying the standard as set forth above and the pertinent factors that we discuss below.

¶ 33 As to the factors that should be considered in applying the standard above, *Morris* provides that it "involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial." 154 Ariz. at 121, 741 P.2d at 254. With an omission and modification we discuss below, we find the following factors to be relevant in examining reasonableness:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation [on the merits]; . . . any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Chaussee v. Md. Cas. Co.*, 60 Wash.App. 504, 803 P.2d 1339, 1343 (1991); *see also Americold Corp.*, 934 P.2d at 87 (same).

¶ 34 We have modified the foregoing list of factors to clarify that while costs, expenses and risks of litigation should be considered in what constitutes a reasonable settlement amount, it is only those costs, expenses and risks that relate to the merits of the underlying case that should be considered. The costs, expenses and risks of litigation for any coverage or bad faith litigation (specifically including the risk of not recovering a judgment due to coverage issues or the insurer's conduct) should not be considered. This is consistent with the mandate that the settlement reflect what would occur in an arm's-length negotiation "on the *merits* of the claimant's case." *Morris*, 154 Ariz. at 121, 741 P.2d at 254 (emphasis in original).

¶ 35 Additionally, the listing of factors from *Chaussee* and *Americold* also contains a reference to considering "the released person's ability to pay." *Chaussee*, 803 P.2d at 1343; *Americold*, 934 P.2d at 87.

Under Arizona law, this is not an appropriate factor to consider in determining reasonableness under a *Damron/Morris* agreement. We turn again to *Morris'* call for a determination of reasonableness based "on the *merits* of the claimant's case." 154 Ariz. at 121, 741 P.2d at 254 (emphasis in original). Except in circumstances such as a punitive damages claim, a civil defendant's ability to pay a particular amount is not a relevant factor. *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 449, 652 P.2d 507, 522 (1982) ("[A] defendant's financial statements are irrelevant in the ordinary case, but are admissible to show wealth or financial status of the wrongdoer where an issue regarding punitive damages is submitted to the jury."). Likewise, *inability* to pay (or the potentially devastating impact of a large money judgment on a defendant) is not an admissible fact in determining the merits of the action. *Tryon v. Naegle*, 20 Ariz.App. 138, 142, 510 P.2d 768, 772 (1973) (Closing argument that a specified damages amount "would be very tragic" to defendant was improper. "[T]rial counsel should refrain from commenting on a party's financial ability to satisfy a judgment.").

¶ 36 Thus, it is consistent with the mandate in *Morris* and related case law to preclude consideration of the insured's ability to pay. It is for that reason that we have included in the definition of a "reasonably prudent person" under *Morris* the important qualifier that the person be considered as one who "has the ability to pay a reasonable settlement from his or her own funds." *Supra* at ¶ 23. Only when the insured's ability to pay would be admissible on the merits of the underlying case is ability to pay a factor which can be appropriately considered in determining reasonableness.

¶ 37 We emphasize that the listing of factors we provide above is not exclusive. As with the standard itself, the pertinent principle to be applied in determining what factors to consider is whether the evidence is relevant in re-creating a genuine arm's-length negotiation; the key test is whether the evidence would assist the reasonably prudent person, acting as though the person were dealing with sufficient funds from his or her

own pocket, in determining what a reasonable settlement amount would have been.

## V.

¶ 38 After Botma and Himes entered into the *Damron*/Morris agreement, they moved for entry of judgment pursuant to their stipulation. Safeway moved to intervene and objected to the entry of the stipulated judgment. Safeway argued that a *Morris* hearing must take place before the judgment could be entered. Himes contended that, as there was no judicial determination of damages, but rather a stipulated judgment, *Morris* provided for the hearing to take place after entry of judgment.

¶ 39 The trial court agreed with Himes on this issue. It allowed the intervention but entered the judgment, indicating that it would hold "a post-judgment hearing wherein it may modify the amount of the judgment concerning the reasonableness of damages." As to the entry of judgment, this was error.

¶ 40 Our prior cases hold that where, as here, an insurer has provided a defense and moved to intervene to participate in a damages determination, any judgment will be vacated that does not allow the insurer to intervene. *Mora v. Phoenix Indem. Ins.*, 196 Ariz. 315, 996 P.2d 116 (vacating judgment entered where damages were not stipulated to by the parties); *Anderson v. Martinez*, 158 Ariz. 358, 762 P.2d 645 (App.1988) (vacating a judgment entered against an insured based on a stipulated *amount*, but not a stipulated *judgment*, when insurer was not allowed to intervene). Himes contends that a stipulated judgment, as here, is different. But, as Safeway argues, "it is a distinction without a difference." In terms of the standard and burden of proof, it makes no differ-

ence that the amount of damages or the judgment itself is stipulated to or left open to the court. *Anderson, Mora* and *Morris,* dealing with a stipulated amount, an unspecified amount, and a stipulated judgment respectively, attest to this. In any of these scenarios, the amount is not binding until the insurer has had the opportunity to contest the evidence upon which stipulated amount, stipulated judgment, or non-stipulated request was or will be based.

¶ 41 Himes argues, however, that *Morris* approves the procedure employed by the trial court (immediately entering the judgment prior to a reasonableness hearing) as *Morris* stated that "a judgment" must be modified if the amount is not reasonable. 154 Ariz. at 121, 741 P.2d at 254. In *Anderson*, the trial court expressly recognized that the judgment being entered without the insurer's participation would result in the judgment having no binding effect. 158 Ariz. at 361, 762 P.2d at 648 ("I don't see that the damage figure in this case is binding at all on the insurance company, in that I don't think that the plaintiff has got much of a case against the insurance company, that this would be the damage figure that would come out of a hard-fought trial.") Despite the recognition that the judgment would still be subject to modification,[16] *Anderson* determined that "[w]hile *Morris* concludes that an insurer may later challenge a settlement, it does not hold that an insurer *must* wait to litigate the issues." *Id.* at 363, 762 P.2d at 650 (emphasis in original). The court reasoned that it "would serve the purpose of judicial economy to permit the insurer to take this opportunity when all of the parties are involved and can present evidence to the court on the issue at one hearing." *Id.*[17]

16. Implicit in this provision from *Anderson* is the concept that an insurer may arguably not be allowed to intervene as a matter of right as *Morris* provides that the insurer will not be bound by the settlement amount without being able to contest it. However, if the insurer is on notice of the negotiations, it runs the risk of waiving its right to contest the amount of damages if it fails to promptly act. *See Stufflebeam v. Canadian Indem. Co.*, 157 Ariz. 6, 9, 754 P.2d 335, 338 (App.1988). After all, notice is given to provide an opportunity for the insurer to act. *Id.* One means of taking action is to seek interven-

tion. Denial of such intervention is error. *Mora*, 196 Ariz. at 318, ¶ 11, 996 P.2d at 119. Thus, as a matter of practicality, potential waiver, and judicial economy; the right to intervene is tantamount to one "of right."

17. Additionally, to suggest that *Morris* supports the position that a judgment should first be entered and then a reasonableness hearing follow ignores the reality that prior to *Morris* an insured who had been provided a defense under a reservation of rights simply had no right to enter into a stipulated judgment. *Morris*, 154 Ariz. at 119,

¶ 42 The principle from *Anderson* is sound. To allow for a "post-judgment hearing" to modify the amount of judgment is counterproductive when, as here, the plaintiff may immediately institute a garnishment action on the judgment. As *Anderson* notes, it furthers judicial economy to have the reasonableness determination take place prior to entry of judgment as such a rule will preclude separate garnishment actions (such as that here) when the judgment is still subject to a reasonableness test and all parties are present in the trial court. We recognize that Himes has already instituted a garnishment action based on the judgment entered. We note, however, that this subsequent garnishment action was initiated in the face of the trial court's direct ruling that the judgment at issue was still subject to post-judgment modification. Accordingly, we vacate the judgment entered with entry of judgment to follow the reasonableness hearing on remand.

## VI.

¶ 43 Safeway further contends that no judgment in favor of Himes is appropriate here because the *Damron/Morris* agreement whereby Botma agreed to stipulate to judgment was an illegal contract and void as against public policy. Himes denies illegality but argues alternatively that any illegal portion is severable.

¶ 44 The settlement agreement entered into between appellees and Botma contained two separate sets of assignments by Botma in return for a covenant not to execute against Botma's personal assets. Under one set of assignments, Botma assigned his rights against Safeway for breach of contract and bad faith. Under the other, Botma assigned his rights against the attorneys Safeway retained to represent him in the Himes lawsuit.

¶ 45 It is the assignment of claims against Botma's lawyers that Safeway contends to be illegal. This claim was the subject of our recent decision in *Botma v. Huser*, 202 Ariz. 14, 39 P.3d 538 (App.2002). In *Botma* we

affirmed the decision of the trial court to dismiss Himes' claim against the attorneys on the grounds that Botma's assignment of his legal malpractice claim was the assignment of a personal injury claim and was therefore unenforceable. Safeway contends on appeal in this case that the assignment of Botma's legal malpractice action is not a severable portion of the agreement. It argues that the claim is illegal and vitiates the entire settlement agreement upon which the *Damron/Morris* agreement is based. The trial court rejected Safeway's position. We agree with the trial court.

¶ 46 Assuming (without deciding) that Safeway has standing to make this argument, it fails on the merits. The invalid portions of the agreement may be severed. Our cases provide that:

> If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part.

*Olliver/Pilcher Ins. Inc. v. Daniels,* 148 Ariz. 530, 533, 715 P.2d 1218, 1221 (1986); *see also Hackin v. Pioneer Plumbing Supply Co.* 10 Ariz.App. 150, 157, 457 P.2d 312, 319 (1969) ("A lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time for the same consideration.") The *Damron/Morris* agreement in this case expressly provided that:

> To the extent that he can legally do so, Botma hereby assigns to the plaintiff all of the claims he has against Safeway and Safeway's lawyers[.]

(Emphasis added.) We have no hesitation in determining that the two sets of claims in the *Damron/Morris* agreement, under the circumstances of this case, are severable. The agreement specifically includes a phrase that expressly qualifies the assignment ("To the extent that he can legally do so"). At a minimum, this was a recognition that the claims against the lawyers hired by Safeway to defend Botma stood on a different legal footing than the claims directly against Safe-

---

741 P.2d at 252 (announcing a new rule that "the cooperation clause prohibition against settling without the insurer's consent forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the policy").

way and needed to be treated separately. This was a recognition of the need for severability. Additionally, and important to our analysis here, the challenge to severability is made by a non-party. The claim against severability in this case simply fails in the face of the language of the agreement itself and the lack of any such claim by a party to the agreement. There was no error in declining Safeway's attempt to have the *Damron/Morris* agreement declared unenforceable on these grounds.

## VII.

¶ 47 For the reasons set forth above, we reverse the determination of reasonableness entered by the trial court. The judgment is vacated. We likewise vacate the evidentiary ruling at issue and remand this matter for a reasonableness determination consistent with this opinion.

CONCURRING: E.G. NOYES, JR., and EDWARD C. VOSS, Judges.