**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| APOLLO EDUCATION GROUP, INC., FKA Apollo Group, Inc., *Plaintiff-Appellant*, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, *Defendant-Appellee*. | No. 17-17293 <br><br> D.C. No. 2:15-cv-01948-SPL <br><br><br> ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF ARIZONA |

Filed August 15, 2019

Before: Richard A. Paez and Richard R. Clifton, Circuit Judges, and Gary S. Katzmann,[*] Judge.

Order

---

[*] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

### Certified Question to the Supreme Court of Arizona

The panel certified the following question of state law to the Supreme Court of Arizona:

> What is the standard for determining whether National Union unreasonably withheld consent to Apollo's settlement with shareholders in breach of contract under a policy where the insurer has no duty to defend?

## ORDER

Apollo Education Group, Inc., ("Apollo") has asserted breach of contract and bad faith claims against its insurer, National Union Fire Insurance Company ("National Union") under a governing insurance policy. National Union was contractually bound not to unreasonably withhold consent to settlement from its insured, Apollo. This appeal presents the question of the standard imposed by Arizona law on an insurer's obligation not to unreasonably withhold consent to a settlement, where the insurer has no duty to defend. Should the federal district court assess the objective reasonableness of National Union's decision to withhold consent from the perspective of an insurer or an insured?

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

As detailed below, the Teamsters Local 617 Pension & Welfare Funds ("Teamsters") filed a securities class action lawsuit against Apollo in the U.S. District Court for the District of Arizona. After five years of litigation, Apollo and the Teamsters settled. National Union, as Apollo's insurer, declined to consent to the settlement, and Apollo sued National Union for breach of its contractual obligation not to unreasonably withhold consent. The district court held that because National Union reasonably considered the settlement, Apollo's breach of contract claim failed as a matter of law.[1]  1ER 4–5.[2]

Apollo now argues before this court that summary judgment was improper because the district court erred in concluding that the insurer need only "consider[] the terms" of the settlement. Pl.'s Br. at 38. Apollo contends that under Arizona law, an insurer must consent to an objectively reasonable settlement. *Id.*  National Union instead frames the district court's decision as construing "the insurance policy's consent-to-settlement provision to focus on the objective reasonableness of National Union's decision to withhold consent, rather than whether the settlement was reasonable from Apollo's perspective." Def.'s Br. at 30. Thus, while both Apollo and National Union contend that the reasonableness standard is "objective," they dispute from

---

[1] The district court also held that Apollo's claim that National Union breached its duty to act in good faith failed as a matter of law.  1ER 5. Because the district court's analysis of this claim largely relied upon its breach of contract analysis, we forgo addressing this claim pending resolution of this open question of Arizona state law on the breach of contract claim.

[2] "ER" references are to the excerpts of record filed by the parties in this court for the purposes of this appeal.

whose perspective the district court should evaluate reasonableness.

Because this issue is governed by Arizona law but is not clearly addressed by relevant Arizona authorities, we certify it to the Supreme Court of Arizona pursuant to the procedures established by Arizona Revised Statutes § 12-1861 and Rule 27 of the Rules of the Supreme Court of Arizona.

## I.   Factual Background

Pursuant to Supreme Court of Arizona Rule 27(a)(3)(B), we set forth the facts relevant to the question certified.

In 2005, Apollo purchased a $15 million directors and officers ("D&O") insurance policy ("the Policy") from National Union. In March 2006, the Wall Street Journal published an article in which it identified the practice of backdating stock options for corporate executives. 2ER 95–103. Backdating is particularly problematic when it results in companies under-reporting executive compensation to their shareholders. The article did not identify Apollo as one of the companies affected. *Id.*

In June 2006, the U.S. Attorney's Office for the Southern District of New York issued a grand jury subpoena, and the Securities and Exchange Commission issued a letter notifying Apollo of its intent to investigate the company for backdating. Neither resulted in charges or enforcement activities. 8SER 1558; 2SER 71. Apollo simultaneously conducted its own internal investigation. Apollo subsequently disclosed publicly that "57 of the 100 total grants made during [the relevant] time period used incorrect measurement dates for accounting purposes." 2ER 155. On October 18, 2006, after Apollo issued a statement admitting

"various deficiencies in the process of granting and documenting stock options," the Teamsters alleged Apollo's stock price fell by 22.9% in one day. 4ER 543–44. Apollo's final report, however, found no direct evidence of backdating. 2ER 154.

In November 2006, the Teamsters, as lead plaintiff, filed a securities class action in the U.S. District Court for the District of Arizona, alleging fraudulent misrepresentations and backdating by Apollo in violation of the Securities Exchange Act of 1934. 3ER 290. In March 2009, the district court denied Apollo's motion to dismiss the Teamsters' complaint, finding that the Teamsters "sufficiently pled backdating." 3ER 429–500, 460–62. In April 2009, the Teamsters filed an amended complaint that included 54 allegedly false statements by Apollo and the reasons why the statements were false. 4ER 524–42. In March 2011, the district court concluded that the falsity allegations were not pled with particularity, and thus, "[b]ecause the court has expressly found that at least one of the elements of plaintiff's [backdating] claim is missing, i.e. falsity, that claim fails, and there is no need for the court to consider defendants' loss causation and scienter arguments." 4ER 602. The district court dismissed the complaint with prejudice and entered final judgment for Apollo. 4ER 604.

The Teamsters filed a motion to reconsider and a proposed amended complaint. In its March 2012 order, the district court denied the motion, reasoning that (1) the Teamsters had not met its burden to show that subsequent case law warranted setting aside the judgment, 4ER 624; and (2) the Teamsters had not shown clear error sufficient to justify reopening a final judgment, 4ER 634.

The Teamsters timely appealed the district court's order to this court. 3ER 314. In January 2013, while the appeal

was pending, Apollo, National Union, and Apollo's excess insurance carriers agreed to mediation with the Teamsters. 2ER 27. The parties entered into a Mediation Confidentiality Agreement. 6ER 1075–77. After over a year of mediation, Apollo agreed to settle with the Teamsters for $13,125,000. 2ER 27. Apollo had $13,500,000 remaining on the Policy with National Union. 2ER 25.

Apollo's counsel believed the settlement was "a great deal" for Apollo, 5ER 959, and that the appeal of the backdating litigation would be an "enormously expensive case to defend" if the case was reversed by this court, 5ER 823. Apollo feared the Teamsters could recover "a substantial multiple of insurance coverage" if successful on appeal. 5ER 803.

Pursuant to the Policy, National Union had no duty to defend Apollo. Instead, Apollo controlled its own defense and settlement negotiations. 2SER 75, 9SER 1838. The Policy provides:

> The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into settlement agreement, stipulate any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. *The Insurer's consent shall not be unreasonably withheld*, provided that the Insurer shall be entitled to effectively

> associate in the defense, the prosecution and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer.

2ER 48 (emphasis added).

National Union declined to consent to or fund the settlement. 4ER 770. Apollo nonetheless settled with the Teamsters, using its own funds. *Id.* Apollo then filed the present action in district court to recover $13,125,000 under its Policy from National Union. *Id.* Apollo alleged breach of contract under the Policy and bad faith, arguing that National Union unreasonably withheld consent to the settlement. 2ER 23–33.

In February 2017, National Union filed a motion for summary judgment. ECF 74; 6ER 1137. National Union argued that summary judgment was appropriate on Apollo's breach of contract, bad faith, and punitive damages claims because National Union did not unreasonably withhold its consent to the settlement. *Id.* Apollo argued against summary judgment, contending that there were genuine issues of material fact regarding the reasonableness of its settlement and National Union's failure to consent. ECF 87; 6ER 1138. In October 2017, the district court granted summary judgment in favor of National Union.[3] ECF 104; 6ER 1139.

---

[3] The district court also precluded Apollo from introducing documents protected by California's mediation privilege. 1ER 7. Apollo challenged the district court's ruling on the admissibility of those documents in the present appeal, which we affirmed in a concurrently-filed separate disposition.

The district court first found no genuine issue of material fact that National Union's withholding of consent to settlement was reasonable.[4]  The district court stated that it construed the Policy "in accordance with [its] 'plain and ordinary meaning'" and "'to effectuate the parties' intent.'" 1ER 3 (internal citations omitted).  The district court noted that "[i]n the context of insurance, questions of reasonableness can be resolved by the Court as a matter of law when the position of the parties turns on 'the interpretation of standard language in the form policies.'" 1ER 3 (quoting *Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 641 (Ariz. Ct. App. 2011).  The district court defined National Union's obligation as "giv[ing] equal consideration to both the interests of itself and of its insured." 1ER 4 (citing *Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 984 P.2d 574, 578 (Ariz. Ct. App. 1999)).  The district court then noted the undisputed steps National Union took to consider the settlement and concluded that in light of National Union's "extensive analysis weighing the Teamsters' settlement, taken in conjunction with the express terms of Plaintiff's policy, it is clear that Defendant fulfilled its obligation to Plaintiff by considering the terms of the Teamsters' settlement and that Plaintiff's breach of contract claim must fail as a matter of law." [5] 1ER 4.

---

[4] The district court also concluded that Apollo's bad faith claim must fail as a matter of law because it "failed to set forth facts from which a reasonable juror could find that Defendant acted unreasonably, or knew that it was acting unreasonably, when it refused to consent to Plaintiff's settlement with the Teamsters."  1ER 5.

[5] The district court stated:

> Defendant concluded that settlement was premature –
> and likely unnecessary – because of the probability

Apollo filed its Notice of Appeal to this court on November 10, 2017.  We heard argument on April 8, 2019, and we issued a memorandum disposition on the issue of mediation privilege concurrently with this Certification Order.

## II. Question of Law

This case turns on Arizona state law.  The basic question is:  What is the standard for determining whether National Union unreasonably withheld Apollo's settlement with shareholders in breach of contract under a policy where the insurer has no duty to defend?[6]  For the reasons discussed

> that Plaintiff would prevail on appeal.  Moreover, Defendant concluded that even in the unlikely event that Plaintiff did not prevail on appeal, there were a variety of other hurdles that Teamster would have to overcome in order to recover a "substantial judgment" against Plaintiff.

1 ER 4.

[6] Windt's insurance law treatise explains the conflict of interest that an insurer and insured may face in considering a settlement:

> When a claim against an insured can be settled for the policy limit, a conflict of interest exists between the insured and the insurance company.  It is generally in the insured's interest to settle for the policy limit, since doing so protects the insured from any potential personal liability.  However, it is generally not in the insurance company's interest to settle for the policy limit. Apart from considerations of defense costs, the insurance company cannot do any worse than paying its policy limit.  As long as any chance existed, no matter how remote, that the insured might prevail, it would generally be in the insurance company's interest to litigate rather than settle for the policy limit.

below, Arizona case law does not allow us to reliably determine how the Supreme Court of Arizona would answer this basic question of the standard for evaluating the reasonableness of National Union's withholding of consent at issue here.

In Arizona, as in other jurisdictions, judicial analysis of an insurance coverage dispute begins with the principle that:

> [a]n insurance policy is a contract, and in an action based thereon the terms of the policy must govern . . . [W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there.

*Home Indem. Co. v. Wilson*, 489 P.2d 244, 247 (Ariz. 1971) (internal quotes and citations omitted). Here, in construing the phrase "the Insurer's consent [to settlement] shall not be unreasonably withheld," the district court relied upon the Court of Appeals of Arizona's holding in *Bills* that the

---

> Moreover, liability insurance policies, by their terms, give insurers complete discretion in deciding whether to settle or litigate. In light of that fact, and the conflict of interest that can arise between the insurer and the insured in connection with whether a claim against an insured should be settled, the law has imposed on insurance companies an implied contractual obligation to settle under certain circumstances.

1 Allan D. Windt, *Insurance Claims and Disputes* § 5:1 (6th ed. 2016).

insurer was obligated "to give equal consideration to both the interests of itself and of its insured." 1ER 4 (quoting *Bills*, 984 P.2d at 578). The district court interpreted this to require that National Union "consider[] the terms and undert[ake] an assessment of a variety of factors" and concluded that National Union "fulfilled its obligation to [Apollo] by considering the terms of the Teamsters' settlement." 1ER 4. In *Bills*, however, the court was plainly setting forth the meaning of the insurer's obligations under "the implied covenant of good faith and fair dealing," not an insurer's obligations under a consent-to-settle provision. 984 P.2d at 578. *Bills*, therefore, does not answer the question before us.

Apollo relies primarily on two Arizona cases, *United Services Automobile Association v. Morris*, 741 P.2d 246 (Ariz. 1987) and *Himes v. Safeway Ins. Co.*, 66 P.3d 74 (Ariz. Ct. App. 2003), to argue that the district court, in its breach of contract analysis, should have evaluated the objective reasonableness of the settlement, not the extent to which National Union may have considered settlement factors. Pl.'s Br. at 44–45. In both cases, Arizona courts set forth an objective standard, focused on the merits of the underlying claim, to determine whether a settlement was reasonable, and thus whether the insurer must accept it.

In *Morris*, the insurer, United States Auto Insurance ("USAA"), had a duty to defend the insured homeowners in a tort action. 741 P.2d 246. USAA defended the case but reserved its right to deny coverage, claiming the homeowners may have committed intentional acts outside the policy's coverage. *Id.* at 249. The Supreme Court of Arizona, however, noted that this reservation of rights put the homeowners in a precarious position, incentivizing them to limit their personal liability should they not be covered by

the policy.  *Id.* at 251.  USAA's position, however, was that the homeowners' duty to cooperate meant USAA could force the homeowners to "reject any settlement, no matter how reasonable, risk trial, and place [the homeowners] at danger of a judgment larger than the policy limits or one that might not be covered."  *Id.*

The Supreme Court of Arizona explained why USAA's interpretation of its right – to reject a settlement, no matter how reasonable – was problematic.  The Court noted that this would "hamstring[] insureds while granting the insurer a double bite at escaping liability."  *Id.*  "If the verdict were in favor of [plaintiff] . . . USAA would have another chance at escaping the obligation to indemnify because it would be able to relitigate the intentional act exclusion coverage issue . . .  In addition, absent bad faith conduct, USAA will never be at risk for more than [the] . . . policy limit."  *Id.*  On the other hand, the court observed that insureds have an incentive to settle for any amount that allows them to escape personal liability – that is, any amount at or below the policy limit – even if the amount is unreasonable and unwarranted.  *Id.*  The Supreme Court of Arizona thus recognized the conflict between an insurer and insured's interests, particularly when a settlement may be at or near policy limits and the insured could face greater personal liability at trial.

In response to this problem, the Supreme Court of Arizona adopted the standard set forth by Minnesota's Supreme Court in *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982), which held that "neither the fact nor amount of liability to the claimant is binding on the insurer unless the insured or claimant can show that the settlement was reasonable and prudent," in accordance with indemnification principles.  *Morris*, 741 P.2d at 253 (quoting *Miller*, 316 N.W.2d at 735).  The Supreme Court of Arizona then

applied the *Miller* test to determine "whether the settlement was reasonable and prudent." *Id.* at 254. The Court looked to "what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case. This involves evaluating the facts bearing on the liability and damage aspects of a claimant's case, as well as the risks of going to trial." *Id.* (citing *Miller*, 316 N.W. 2d at 735). Thus, if the *Morris* standard applies to this case, the district court would look to whether it was objectively reasonable for Apollo to reach the settlement it did, not whether National Union thought it was reasonable or the steps it took to consider and evaluate the settlement.

In *Himes*, the Court of Appeals of Arizona applied the reasonableness test set forth in *Morris*. 66 P.3d 74. There, an insured involved in an auto accident settled with the accident victim, giving the victim his breach of duty claims against the insurer in exchange for an agreement that the victim would not execute against the insured's personal assets. *Id.* at 87. The trial court judge held an evidentiary hearing and found the settlement reasonable. *Id.* at 78. The insurer appealed. *Id.* at 79. The *Himes* court held that the burden of proving the settlement was reasonable was squarely on the insured, but that the trial judge's conclusion that there was "no evidence that the agreement was unreasonable" was "plainly contradicted by the record." *Id.* at 79–80.

The *Himes* court reiterated the "reasonably prudent person" standard adopted in *Morris* and enumerated factors potentially relevant to evaluating reasonableness:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults;

the risks and expenses of continued litigation [on the merits]; . . . any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Id.* at 85 (quoting *Chaussee v. Md. Cas. Co.*, 803 P.2d 1339, 1343 (Wash. Ct. App. 1991)). The *Himes* court further noted that, "it is only those costs, expenses, and risks that relate to the merits of the underlying case that should be considered. The costs, expenses, and risk of litigation for any coverage or bad faith litigation . . . should not be considered." *Id.* The focus should only be on the merits of the claimant's case, "reflect[ing] what would occur in an arm's-length negotiation." *Id.* The *Himes* court also noted that under *Morris* and related case law an insured's ability to pay should not be considered, except in punitive damages cases. *Id*. The *Himes* court defined "reasonably prudent person" as one who "has the ability to pay a reasonable settlement from his or her own funds" to avoid the need to introduce evidence of the insured's ability to pay into the reasonableness analysis. *Id.* Lastly, the *Himes* court noted that its list of factors was not exhaustive; courts should generally consider factors which are "relevant in re-creating a genuine arm's length negotiation." *Id.*

National Union counters that unlike the policy before us, in *Morris* and *Himes* the insurer had a duty to defend the insured; that is, these cases on which Apollo relies are inapposite because they do not involve "reimbursement polic[ies] under which the insurer has no duty to defend the insured." Def.'s Br. at 37. Both cases, moreover, do not involve the contract language, "insurer's consent shall not be unreasonably withheld," at issue here. National Union

contends that the consent to settle line of cases, involving third-party claims, cannot apply because, "[u]nder Arizona law, a failure to reimburse the cost of a settlement entered by the insured implicates a first-party claim for failure to pay benefits, not a third-party claim for failure to defend the insured."  Def.'s Br. at 37 (citing *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 735 P.2d 125, 135–36 (Ariz. Ct. App. 1986)).  This court cannot say whether the Supreme Court of Arizona would apply the reasonable settlement standard in *Morris* and *Himes* here.

The parties disagree fundamentally on the purpose of the consent to settlement provision in the policy before us. National Union, citing the Windt treatise, contends that "when an insured desires to settle a lawsuit that has been made against it with an insurer's money, the insured does not have complete discretion to spend the insurer's money." Def.'s Br. at 31 (quoting 2 Allan D. Windt, *Insurance Claims & Disputes* § 6:29, at 6-293 n.1 (6th ed. 2016)).  "Since the insured wants to spend not its own money, but someone else's money, the issue is *not* whether the insured had a reasonable basis to pay a particular amount in settlement, but whether the *insurer* had a reasonable basis not to agree to pay that amount of money in settlement." *Id.* (quoting Windt at 6-293 n.1) (emphasis added by National Union).  Apollo, citing *Morris*, argues that the objectively reasonable settlement rule is necessary to protect the insured because of the inherent conflict that arises when an insured is presented with a settlement opportunity at or near the policy limits and the insurer has issued a reservation of rights and strong incentives to avoid a settlement because it can rely on both liability and coverage defenses and absent bad faith will never face exposure beyond its policy limits.  Pl.'s Br. at 44–47.

Though in disagreement as to how consent to settlement provisions should be evaluated, the parties are in agreement as to their essential importance to the system of liability insurance.  We think that the resolution of that disagreement and consideration of an open question of Arizona jurisprudence are better entrusted to the Supreme Court of Arizona than to us.

## III.    Certified Question

In light of the above discussion, we certify the following question of law:   What is the standard for determining whether National Union unreasonably withheld consent to Apollo's settlement with shareholders in breach of contract under a policy where the insurer has no duty to defend?  This court will accept the Arizona Supreme Court's decision on this question.  Our phrasing of the question is not intended to restrict the Arizona Supreme Court's consideration of the case or formulation of the question.  *See Broad v. Mannesmann Anglagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

The clerk of this court shall forward the original and six certified copies of this order, under official seal, to the Supreme Court of Arizona, along with copies of all briefs and excerpts of record that have been filed with this court, as directed by Supreme Court of Arizona Rule 27.

## IV.    Counsel

For Plaintiff-Appellant Apollo Education Group, Inc., FKA Apollo Group, Inc., an Arizona Corporation:

Douglas E. Whitney
Douglas Whitney Law Offices LLC
321 North Clark Street, Suite 1301
Chicago, Illinois 60654
(312) 279-0510

Mark J. DePasquale
Mark J. DePasquale, P.C.
3300 North Central, Suite 2070
Phoenix, Arizona 85012
(602) 744-7777

Mark S. Hersh
Reed Smith, LLP
Chicago, Illinois 60606
(312) 207-6400

For Defendant-Appellee National Union Fire Insurance
Company of Pittsburgh, PA., a Pennsylvania Corporation:

Bennett Evan Cooper
Dickinson Wright
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
(602) 285-5044

Timothy M. Strong
Steptoe & Johnson LLP
Collier Center, Suite #1600
201 E. Washington St.
Phoenix, Arizona 85004-2382
(602) 257-5219

## V.  Filing fee

The parties shall equally share the required filing fees pursuant to Supreme Court of Arizona Rule 27(a)(3)(D).

## VI.    Stay of Proceedings

In light of our decision to certify the issue described here, all further proceedings in this case before our court are stayed pending final action by the Supreme Court of Arizona, save for any petition for rehearing regarding the memorandum disposition filed concurrently with this order. The Clerk is directed to administratively close this docket pending further order.   The parties shall notify the clerk of this court after the Supreme Court of Arizona accepts or rejects certification, and again within fourteen days if the Supreme Court of Arizona issues a decision.

**QUESTION    CERTIFIED;    PROCEEDINGS STAYED.**

It is so **ORDERED.**


_____
Richard A. Paez, Presiding Judge